NO. 25-10545

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

IRA DARLINA BAKER, individually, as the administratrix of the
ESTATE OF DARION DEV'ON BAKER, and on behalf of all wrongful
death beneficiaries of DARION DEV'ON BAKER; MARIO BAKER;
ARLANDRA WILLIFORD,
*Plaintiffs-Appellees*

v.

RICHARD KEITH COBORN and MICHAEL JOSEPH McHUGH,
*Defendants-Appellants*

---

On Appeal from the United States District Court
Northern District of Texas, Amarillo Division
District Court No. 2:19-cv-00077-Z
Honorable Matthew J. Kacsmaryk, District Judge, presiding

---

**DEFENDANTS-APPELLANTS' BRIEF**

---

SPROUSE SHRADER SMITH, PLLC
John F. Massouh, TBN 24026866
Email: john.massouh@sprouselaw.com
Blair Saylor Oscarsson, TBN 24056073
Email: blair.oscarsson@sprouselaw.com
701 S. Taylor Street, Suite 500 (79101)
P.O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300; Fax: (806) 373-3454

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Defendants-Appellants:**
Richard Keith Coborn
Michael Joseph McHugh

**Defendants' Counsel:**
Blair Saylor Oscarsson
John F. Massouh
SPROUSE SHRADER SMITH, PLLC

**Risk Pool for Defendants:**
Texas Municipal League Risk Pool

**Former Defendant:**
City of Stratford, Texas

**Plaintiffs-Appellees:**
Ira Darlina Baker
Mario Baker
Arlandra Williford, on behalf of her minor child, C.W.

**Plaintiffs-Appellees' Counsel:**
Jeff Edwards
David James
EDWARDS LAW

**Plaintiffs-Appellees' Counsel (continued):**
Brian Yoakum
EVANS PETREE PC

/s/ *Blair Saylor Oscarsson*
Blair Saylor Oscarsson
***Attorneys for Defendants-Appellants***

## **STATEMENT REGARDING ORAL ARGUMENT**

Defendants-Appellants respectfully request that the Court grant oral argument, which they believe may aid the Court considering the unique fact scenario.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ............................................... ii

STATEMENT REGARDING ORAL ARGUMENT .................................... iii

TABLE OF AUTHORITIES .......................................................... vi

JURISDICTIONAL STATEMENT ............................................... ix

I.     STATEMENT OF THE ISSUES ....................................... 1

II.    STATEMENT OF THE CASE .......................................... 2

      A. The undisputed evidence, as confirmed by video,
         shows that Officers Coborn and McHugh are
         entitled to qualified immunity ....................................... 2

      B. Procedural Posture ........................................................ 6

III.   SUMMARY OF THE ARGUMENT .................................... 9

      A.  The District Court failed to apply the proper totality-of-the-
          circumstances analysis mandated by *Barnes v. Felix* ................... 9

      B.  No clearly established law prohibited the officers' conduct
          Under these specific circumstances ............................. 10

      C.  The District Court improperly defined "clearly established
          Law" at an impermissibly high level of generality ..................... 11

      D.  Established Fifth Circuit precedent supports qualified
          Immunity under these circumstances ........................... 11

IV.    STANDARD OF REVIEW ............................................... 12

V.     ARGUMENT AND AUTHORITIES ................................. 14

      A.  Officers Coborn and McHugh are entitled to qualified
          immunity because there is no clearly established law

showing the Officers' conduct was objectively unreasonable ................................................................................ 14

    1.  Considering the totality of the circumstances, Officers are entitled to qualified immunity for all their shots because they reasonably used deadly force when Mr. Baker weaponized his vehicle against Officer Coborn. ........ 15

    2.  No clearly established law prohibited shooting Baker after he started the vehicle, put the vehicle into drive, reached down, and then weaponized his vehicle against Coborn ................................................................................ 19

  B.  The District Court improperly denied qualified immunity by defining "clearly established law" at an impermissibly high level of generality ........................................................................ 25

  C.  Established legal authority overwhelmingly supports qualified immunity for Officers Coborn and McHugh when their use of force is judged by the totality of the circumstances surrounding the even ........................................... 30

VI.   CONCLUSION ................................................................. 34

CERTIFICATE OF SERVICE .................................................... 36

CERTIFICATE OF COMPLIANCE ........................................... 37

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999)...................................................... 28

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...........................................................14, 30

*Baker v. Coborn*, 68 F.4th 240 (5th Cir. 2023)......................................7, 22, 26, 35

*Baker v. Coborn*, 773 F. Supp. 3d 300 (N.D. Tex. 2025)......................................26

*Barnes v. Felix*, 145 S. Ct. 1353 (2025) .................................. 9, 15, 16, 17, 22, 30

*Boyd v. McNamara*, 74 F.4th 662 (5th Cir. 2023) ................................................ 30

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ............................................................30

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ............................................... 12

*Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) ........................................... 28

*Cowan ex. rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003) ..............28

*Dawes v. City of Dallas*, No. 22-10876, 2024 U.S. App. LEXIS 7980

    (5th Cir. Apr. 3, 2024) ....................................................................... 26, 28

*Edmond v. City of New Orleans*, No. 93-3602, 1994 U.S. App. LEXIS 42156,

    1994 WL 144782 (5th Cir. Apr. 7, 1994); dismissed 20 F.3d 1170

    (5th Cir. 1994) .................................................................. 10, 22, 23, 24, 27

*Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022) ................................................. 27

*Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993) ..........................................28

*Estevis v. Cantu*, 134 F.4th 793 (5th Cir. 2025) ...................................... 11, 31, 32

*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) ................... 10, 21, 22, 27

*Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992) ................................. 23

*Gibson v. Rich*, 44 F.3d 274 (5th Cir. 1995) ........................................... 14

*Gragert v. Waybright*, 423 F. App'x 428 (5th Cir. 2011) ..................................... 27

*Irwin v. Santiago*, No. 21-10020, 2021 U.S. App. LEXIS 31692, 2021 WL 4932988

    (5th Cir. Oct. 21, 2021) .................................................................... 11, 32, 33

*Jimerson v. Lewis*, 92 F.4th 277 (5th Cir. 2024) ........................................... 14, 19

*Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) .............................................. 12

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) ............................................... 12

*Kisela v. Hughes*, 584 U.S. 100 (2018) ................................................................30

*Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009) ............ 10, 19, 20, 21, 27, 31

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................................................14

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..............................................................1

*Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011) .............................................. 28

*Morrow v. Meachum*, 917 F.3d 870 (5th Cir. 2019) .......................... 11, 19, 24, 28

*Mullenix v. Luna*, 577 U.S. 7 (2015) ..............................................................11, 25

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012) ............................................... 12

*Orn v. City of Tacoma, Wash.*, 949 F.3d 1167 (9th Cir. 2020) ........................... 28

*Pasco v. Knoblauch*, 566 F.3d 572 (5th Cir. 2009) ............................................. 31

Pearson v. Callahan 555 U.S. 223 (2009) ...........................................................14

*Pierson v. Ray*, 386 U.S. 547 (1967) .................................................................... 27

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ........................................................... 22

*Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021) ................................... 27

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) ................................................ 23

*Scott v. Harris*, 550 U.S. 372 (2007) .................................................................. 31

*Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005) ....................................................... 28

*Trevino v. Trujillo*, 756 F. App'x. 355 (5th Cir. 2018) ......................................... 27

*Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003) ................................................. 28

*Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005) .............................................. 28

*White v. Balderama*, 161 F.3d 913 (5th Cir. 1998) ....................................... 24, 27

## Statutes

28 U.S.C. § 1292 ................................................................................................... 1

42 U.S.C. § 1983 ................................................................................................... 6

## Rules

Fed. R. Civ. P. 56(a) ............................................................................................ 12

Fed. R. App. P. 28.1(e)(2) .................................................................................... 37

Fed. R. App. P. 32(a)(5) ....................................................................................... 37

Fed. R. App. P. 32(a)(6) ....................................................................................... 37

Fed. R. App. P. 32(a)(7)(B)(iii) ........................................................................... 37

## <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292 because it is an appeal of an order that denied Appellants-Defendants' assertion of qualified immunity.[1] *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Appellants-Defendants' timely appealed by filing their notice of appeal within 30 days of the District Court's order of March 26, 2025.[2]

---

[1] ROA.3397–3415.
[2] ROA.3416–3417.

# I.

## <u>STATEMENT OF THE ISSUES</u>

This appeal raises the questions regarding the denial of qualified immunity.

**<u>Issue 1:</u>**     Whether the District Court improperly fragmented its analysis of the officers' reasonableness by artificially dividing the officers' shots into separate groups, instead of evaluating the totality of the circumstances?

**<u>Issue 2:</u>**     Whether the officers are entitled to qualified immunity when no clearly established law informed them that their conduct was unreasonable based on the complete sequence of events?

**<u>Issue 3:</u>**     Whether the District Court erred in denying qualified immunity by defining "clearly established law" at an impermissibly high level of generality rather than analyzing whether existing precedent provided fair warning that the officers' specific conduct was unlawful?

**II.**

**STATEMENT OF THE CASE**

**A.    The undisputed evidence, as confirmed by video, shows that Officers Coborn and McHugh are entitled to qualified immunity.**

In February 2018, Darion Baker ("Baker") and his friend Gregory Dees ("Dees") flew one-way from Memphis, Tennessee, to Burbank, California.[3] After several days in California and with no ticket for return, they decided to steal a car and drive it back home to Memphis.[4] They found an Infiniti sedan in a Walgreens parking lot in Inglewood, California, with keys in it and the engine running.[5] Baker and Dees stole the vehicle.[6] As they headed east on I-40 out of California, they formed a plan that if the police attempted to stop them, they would flee and escape.[7]

On February 21, 2018, Baker and Dees continued their joy ride along I-40 going through Albuquerque, New Mexico, and somehow ending up well north of I-40 on the outskirts of Stratford, Texas.[8] That evening, City of Stratford police officers Coborn and McHugh were on duty and enforcing traffic laws by parking along Highway 54 in a marked patrol vehicle.[9] They observed the driver of an Infiniti sedan, bearing a California license plate, apply the brakes abruptly causing the car

---

[3] ROA.2122.
[4] ROA.2187-88.
[5] ROA.2186-88.
[6] ROA.2188.
[7] ROA.2202-04.
[8] ROA.2191-92.
[9] ROA.1850-53, 1977-78.

to drastically slow down as it passed the parked police vehicle.[10] Officers Coborn and McHugh found the marked change in speed suspicious because the vehicle had not been speeding when the driver strongly applied the brakes.[11] Officers Coborn and McHugh entered the highway and observed the Infiniti pull into the Pilot gas station.[12]

It was dark when Baker and Dees parked at the gas pumps.[13] Baker and Dees both got out of the vehicle and walked into the gas station.[14] While they were in the store, Officers Coborn and McHugh ran a query through TCIC / NCIC on the Infiniti's California license plate.[15] The database indicated the vehicle was stolen.[16] Because sometimes there are mistakes in the database, the officers went one step further and contacted the reporting police agency in California to verify that the car was in fact stolen.[17]

While Baker and Dees were in the gas station, they approached three men inside the store.[18] Baker and Dees asked the men how to get to Memphis, Tennessee, on the backroads to avoid law enforcement.[19] The three men thought Baker and

---

[10] ROA.1850-53, 1977-78.
[11] ROA.1853, 1855, 1861, 1977.
[12] ROA.1862, 1978.
[13] ROA.2192.
[14] ROA.2199.
[15] ROA.1856-57, 1978-80.
[16] ROA.1856, 1977-80.
[17] ROA.1864, 1977.
[18] ROA.2107-109, 2110-112, 2113-115, 2197-198.
[19] ROA.2107-109, 2110-112, 2113-115, 2197-198.

Dees's questions were suspicious and reported their suspicions to Officer Coborn who had entered the store.[20]

Baker and Dees then returned to the stolen Infiniti.[21] Baker got in the car and sat in the driver's seat while Dees prepared to fill the car up with gas.[22] As Dees moved toward the gas tank with the gas pump in hand, Officers Coborn and McHugh pulled the police SUV in behind the stolen Infiniti, with the red and blue lights of the police vehicle flashing.[23] As the officers pulled up, Dees threw the gas pump on the ground and jumped in the passenger side of the car.[24] Both officers quickly got out of the police SUV and began yelling verbal commands to Baker and Dees such

---

[20] ROA.1864, 2108.

[21] ROA.2199-2200. *See* ROA.2255, which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 449; this is video from the Pilot gas station's camera. *See* ROA.2256; which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 450; this is video from the Trucker's dash camera. *See* ROA.2023, which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 217; this is video from Officer McHugh's bodycam. *See also* ROA.2024, which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 218. This is video from the officers' dashcam.

[22] ROA.2023, 2024, 2199-2200

[23] ROA.2024, 2255; *see also* ROA. 2257, which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 451; this is a synced video summary of Officer McHugh's body cam footage, the patrol vehicle's dash cam footage, Pilot gas station video footage, and the truck dash cam footage.

[24] ROA.2201, 2024, 2255, 2256.

as "Get out of the car" and "Let me see your hands."[25] Dees said he heard the commands and responded by putting his hands in the air.[26]

Officer Coborn approached the Infiniti on the driver's side, and McHugh approached the passenger's side.[27] The officers continued to give verbal commands, but they could not see inside the Infiniti because the window tinting was too dark to see through.[28] To get a better look at the men inside the car, Officer Coborn moved up in front of the Infiniti while Officer McHugh moved up next to the front quarter panel of the passenger side.[29] While the officers continued to give verbal commands, Baker and Dees remained in the vehicle.[30]

Baker and Dees decided to stick to the plan they made to flee from officers if they were stopped.[31] Baker moved his hand down to put the car in drive.[32] At this time, the officers yelled "Let me see your hands" and "If you go forward, I will…"[33]

When Baker put the car in drive, both officers also feared Baker would run over Officer Coborn.[34] Fearing for his life, Coborn fired shots before the car moved,

---

[25] ROA.2023, 2024, 2108, 2112, 2115, 2207, 2255, 2256.
[26] ROA.2207.
[27] ROA.1879-880, 1989, 2024, 2255, 2256.
[28] ROA.1876-878, 1988-989, 2200.
[29] ROA.1876-880, 1989-991, 2024, 2209-2210, 2255, 2256.
[30] ROA.2024, 2109, 2113, 2115, 2130-131.
[31] ROA.2202-204.
[32] ROA.1855, 1882, 2241.
[33] ROA.2023, 2024.
[34] ROA.2003-004.

for which he has qualified immunity.[35] Baker, a split second later, drove forward and to the left while Coborn stood directly in front of the car, continuously shooting at Baker.[36] At the same moment, McHugh began shooting at Baker.[37] Baker was struck by two bullets that entered the right side of his back at a diagonal angle.[38]

The car continued traveling, albeit slowly, through the parking lot of the gas station.[39] Officer Coborn ran after and alongside the vehicle and fired two additional shots.[40] The car traveled out of the Pilot parking lot, across the highway, and came to rest at a gas station on the other side of the highway.[41] Officer McHugh removed Dees from the car and arrested him without incident. Dees, who put his hands up and never threatened officers, was unharmed.[42] Baker was removed from the car, the officers rendered aid, but he died at the scene.[43]

Conclusive video evidence from four cameras shows the entire incident— events leading up to the shooting, the shooting, and the aftermath following the shooting.[44]

### B. Procedural Posture

---

[35] *See Baker v. Coborn*, 68 F.4th 240, 247-249 (5th Cir. 2023).
[36] ROA.1887-888, 2024, 1882, 1992-994, 2023, 2024, 2025-2106, 2256, 2257.
[37] ROA.2023, 2024, 1887-888, 2024, 1882, 1992-1994, 2023, 2024, 2025-2106, 2256, 2257.
[38] ROA.2158-159.
[39] ROA.2024, 2255, 2256, 2257.
[40] ROA.1889-890, 2023, 2024, 2135, 2255, 2256, 2257.
[41] ROA.2125, 2135, 2024.
[42] ROA.2024, 2124-126.
[43] ROA.2024, 2156.
[44] ROA.2023, 2024, 2255, 2256, 2257.

Plaintiffs-Appellees filed the Original Complaint on April 15, 2019, against the Officers and the City of Stratford, Texas.[45] Plaintiffs-Appellees sued the officers under 42 USC § 1983 alleging that the officers violated Baker's civil rights and were the moving force of their injuries and Baker's wrongful death. Plaintiffs-Appellees also sued the City of Stratford alleging *Monell* claims.[46]

Defendants-Appellants filed a Motion to Dismiss, alleging that Baker's constitutional rights were not violated and that the officers are entitled to qualified immunity, which the District Court denied.[47] The District Court did, however, grant the motion to dismiss the City of Stratford, which Plaintiffs-Appellees did not challenge.

Defendants-Appellants filed their first Motion for Summary Judgment on August 18, 2020, which the District Court granted.[48] First, the District Court separated the shots into two groups—shots fired before and shots fired after the car moved—and concluded that Plaintiffs-Appellees failed to establish that Officer Coborn's actions violated clearly established law with respect to the first round of shots before the sedan had moved. Second, the District Court found that the shots

---

[45] ROA.17.
[46] ROA.17–24.
[47] ROA.48–65.
[48] ROA.239–271, 1613–1634.

fired after the sedan had moved were objectively reasonable and therefore did not violate the Fourth Amendment (the "First Ruling").

Plaintiffs-Appellees' appealed the First Ruling[49] and this Court held oral arguments on October 3, 2022. On May 19, 2023, this Court affirmed the District Court's summary judgment as to the first round of shots and reversed and remanded the District Court's summary judgment as to the second round of shots.[50] *Baker v. Coborn*, 68 F.4th 240 (5th Cir. 2023). As to the first round of shots, this Court concluded that "plaintiffs have not pointed to sufficient authority clearly establishing that Coborn's conduct violated the law under the specific circumstances he was facing, and thus he is entitled to qualified immunity." *Id*. at 247. Regarding the constitutionality of the second round of shots, this Court found that Baker's Fourth Amendment rights were violated, but because the District Court had not yet analyzed the Officers' qualified immunity, the case was remanded. *Id*. at 251.

After remand, on July 1, 2024, Defendants-Appellants brought a Second Motion for Summary Judgment showing the District Court that the officers are entitled to qualified immunity for the shots fired after the car moved.[51] The District

---

[49] ROA.1635.
[50] ROA.1638–1655.
[51] ROA.1782–1806.

Court denied the second motion for summary judgment, from which Appellants now appeal.[52]

## III.

## SUMMARY OF THE ARGUMENT

Officers Coborn and McHugh are entitled to qualified immunity because Appellees-Plaintiffs cannot demonstrate that the officers' conduct violated clearly established law that would have put a reasonable officer on notice that their actions were unlawful. The District Court committed multiple legal errors in denying qualified immunity that require reversal.

**A.    The District Court failed to apply the proper totality-of-circumstances analysis mandated by *Barnes v. Felix*.**

Rather than evaluating the entire encounter as a unified incident, the District Court improperly divided the officers' shots into separate groups and analyzed them in isolation. Under *Barnes v. Felix*, courts must consider all relevant circumstances, including the complete sequence of events leading up to the use of force, without artificial divisions. 145 S. Ct. 1353, 1356 (2025) Here, the totality of circumstances—including Baker's theft of a vehicle across multiple states, refusal to follow commands, active resistance to arrest, attempt to flee with a passenger who had his hands up in compliance, lowering of his hand like he was reaching for a gun,

---

[52] ROA.3397–3415.

weaponization of the vehicle against Officer Coborn by driving within three feet of him, and his continued flight toward a highway intersection—demonstrate that the officers' use of deadly force was objectively reasonable throughout the encounter.

**B.    No clearly established law prohibited the officers' conduct under these specific circumstances.**

The cases relied upon by the District Court are factually distinguishable and do not provide the "fair warning" required to overcome qualified immunity. Unlike *Lytle v. Bexar County*, which involved disputed facts that prevented a qualified immunity determination, this case presents undisputed video evidence showing that the officers were in a clearly marked patrol car, wearing department uniforms, and displaying flashing emergency lights, yet Baker ignored their multiple verbal commands and warnings. *See Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009). The video shows Officer Coborn positioned in front of Baker's vehicle because he was unable to see inside due to the darkly tinted windows. Baker then started the engine while Coborn stood directly in front of the car, dipped down in what Coborn perceived as reaching for a weapon, put the vehicle in drive, and drove forward and to the left—barely missing Coborn by only three feet. After this near-miss assault with the vehicle, Baker continued his escape attempt toward the intersection of two highways, demonstrating his ongoing threat to public safety and his determination to evade arrest at any cost.

Another cited case—*Flores v. City of Palacios*—involved a teenager who

never used her vehicles as weapon. 381 F.3d 391 (5th Cir. 2004). *Edmond v. City of New Orleans* was cited as well, but it is inapplicable because those officers were dressed in plain clothes and in an unmarked car, and the suspects said they would not have fled if they had realized they were being stopped by police. These cases present fundamentally different factual scenarios that cannot provide notice to officers facing a suspect who has weaponized his vehicle. *See* No. 93-3602, 1994 U.S. App. LEXIS 42156, 1994 WL 144782 (5th Cir. Apr. 7, 1994); *dismissed* 20 F.3d 1170 (5th Cir. 1994).

**C.     The District Court improperly defined "clearly established law" at an impermissibly high level of generality.**

Following *Mullenix v. Luna*, qualified immunity requires precedent that "squarely governs" the specific facts at issue. 577 U.S. 7, 13 (2015). The District Court's broad pronouncement that officers cannot use deadly force against fleeing suspects who pose no immediate danger states the law too generally and fails to account for the particular circumstances where a suspect has weaponized his vehicle against an officer. The constitutional question must be beyond debate, and existing precedent must provide fair warning clear enough that "every reasonable officer would know it immediately." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019).

**D.     Established Fifth Circuit precedent supports qualified immunity under these circumstances.**

This Court's decisions in *Estevis v. Cantu* and *Irwin v. Santiago* demonstrate that officers are entitled to qualified immunity when facing suspects who use vehicles as weapons, even where reasonable factfinders might conclude a constitutional violation occurred. *Estevis v. Cantu*, 134 F.4th 793, 795 (5th Cir. 2025), cert. pending; *Irwin v. Santiago*, No. 21-10020, 2021 U.S. App. LEXIS 31692, at *7-8, 2021 WL 4932988 (5th Cir. Oct. 21, 2021). These cases confirm that the specific combination of facts present here—a fleeing felon who weaponized his vehicle, narrowly missed an officer, and continued to flee toward the intersection of two highways—does not violate clearly established law.

The District Court's errors in failing to apply *Barnes*, relying on inapplicable precedent, and defining the law at an improper level of generality require a reversal of the District Court and a render of judgment in favor of Officers Coborn and McHugh, as they are entitled to qualified immunity as a matter of law.

## IV.

## <u>STANDARD OF REVIEW</u>

The appellate court reviews the district court's ruling on a motion for summary judgment "*de novo*, using the same standard as that employed by the district court under Rule 56." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law.'" *Id*. (citing FED. R. CIV. P 56(a)). When reviewing a summary judgment, the appellate court "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id*. (citation omitted). However, when video evidence is available, courts must assign it greater weight— even at the summary judgment stage. *Id*. If a party's account is contradicted by the video record, the court need not accept that version and should instead adopt "the facts in the light depicted by the videotape." *Id*. (citations and quotations omitted).

Under the collateral order doctrine, appellate review following denial of summary judgment is limited to issues of law, including the legal significance of factual disputes identified by the district court. *Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020). That means the Court "may evaluate whether a factual dispute is *material* (*i.e.*, legally significant), but [it] may not evaluate whether it is *genuine* (*i.e.*, exists)." *Id.* (emphasis in original).

Furthermore, a defendant asserting qualified immunity changes the standard summary judgment burden of proof. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the [qualified immunity] defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* Plaintiff "bears the burden of negating qualified immunity," but "all inferences are drawn in [her] favor." *Id*. Whether defendants' actions were

"objectively unreasonable in light of clearly established law" is a "purely legal question." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004).

## V.

## ARGUMENT

**A.     Officers Coborn and McHugh are entitled to qualified immunity because there is no clearly established law showing the Officers' conduct was objectively unreasonable.**

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Jimerson v. Lewis*, 92 F.4th 277, 280-281 (5th Cir. 2024). "Clearly established law is determined by reference to "controlling authority, or a robust consensus of persuasive authority. The keystone in this analysis is fair warning." *Id.* (citation and quotation omitted). "To overcome qualified immunity, plaintiffs must cite a body of relevant case law in which an officer acting under similar circumstances…was held to have violated a defendant's constitutional rights." *Id.* (citation and quotation omitted). "While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731(2011)).

Qualified immunity shields government officials, like Officer Coborn and Officer McHugh, from liability while they are performing discretionary functions

unless the officers' conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation and citation omitted). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Appellees cannot show that the law was clearly established on February 21, 2018, that Coborn or McHugh was unreasonable in shooting at Baker, who Appellees admit drove a vehicle to within three feet of Coborn while attempting to flee.[53]

**1. Considering the totality of circumstances, Officers Coborn and McHugh are entitled to qualified immunity for all their shots because they reasonably used deadly force when Mr. Baker weaponized his vehicle against Officer Coborn.**

The Supreme Court recently clarified the proper analysis required when evaluating qualified immunity. *Barnes,* 145 S. Ct. at 1356 ("To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment."). In

---

[53] ROA.2032.

light of *Barnes*, the District Court erred in dividing the shots into two groups and

denying qualified immunity for some shots without considering the totality of the

circumstances. [54] *See* 145 S. Ct. at 1356. The Supreme Court stated as follows:

> The question in [a deadly force case]… is whether the force deployed was justified from the perspective of a reasonable officer on the scene, taking due account of both the individual interests and the governmental interests at stake.
>
> That inquiry into the reasonableness of police force requires analyzing the totality of the circumstances. There is no easy-to-apply legal test or on/off switch in this context. Rather, the Fourth Amendment requires [] that a court slosh its way through a factbound morass. Or said more prosaically, deciding whether a use of force was objectively reasonable demands "careful attention to the facts and circumstances" relating to the incident, as then known to the officer. For example, the severity of the crime prompting the stop can carry weight in the analysis. So too can actions the officer took during the stop, such as giving warnings or otherwise trying to control the encounter. And the stopped person's conduct is always relevant because it indicates the [nature and] level of the threat he poses, either to the officer or to others.
>
> Most notable here, the "totality of the circumstance" inquiry into a use of force ***has no time limit***. Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice in that moment that is under review. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones. []

---

[54] ROA.1563-64, 1629-30. The District Court divided the shots into two groups in the First Ruling. This Court continued to analyze the shots as two groups, as did the parties. However, following the Supreme Court's opinion in *Barnes*, all shots must be analyzed through the "totality-of-the-circumstances" framework. *Barnes*, 145 S. Ct. 1358.

> *[T]hose later, in-the-moment facts cannot be hermetically sealed off from the context in which they arose*.

*Id*. at 1358 (citations and quotations omitted) (emphasis added). "The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force." *Id*.

Faced with no good options, these officers used deadly force, which was objectively reasonable considering the required "totality-of-the-circumstances" inquiry. *See id*. at 1360, 1363 (Kavanaugh, J., concurring, joined by Thomas, J., Alito, J., and Barrett, J.) ("[W]hen a driver abruptly pulls away during a traffic stop, an officer has no particularly good or safe options. None of the options available to the officer avoids danger to the community, and all of them require life-or-death decisions that must be made in a few seconds in highly stressful and unpredictable circumstances.)

Here, the entire incident lasted approximately 22 seconds from the first command of "show me your hands" to the last shot fired. Following *Barnes*, the entire 22-second incident, as well as all information gathered from the first moment officers spotted the car, must be analyzed together. *See id*. Accordingly, it is improper to divide the shots into groups and analyze the shots before the car moved and after the car moved as separate episodes. *See id*. at 1358. Therefore, the District Court erred when it failed to consider totality of the circumstances when assessing

the reasonableness of the officers' perception that Baker was a threat throughout the incident, including:

- Officers knew Baker committed a serious felony by stealing a car in California and driving it to Stratford, Texas;

- Officers knew Baker was trying to get to Memphis, Tennessee, without coming across law enforcement and using back roads;

- Officers were in a marked patrol car, wearing department-issued uniforms, and exhibiting flashing blue and red lights at the time of the attempted stop;

- Officers gave multiple verbal commands and warnings, which were ignored;

- Coborn tried to see inside Baker's vehicle, but the windows were too darkly tinted;

- Baker started the car while Coborn stood in front;

- Baker dipped down, which Coborn perceived as reaching for a weapon;

- Baker put the car in gear while Coborn stood in front;

- Baker drove the car forward and to the left while Coborn stood in front of the car;

- Baker barely missed Coborn by three feet;

- Baker continued his attempted escape after he narrowly missed Coborn;

- Baker was headed toward the intersection of two highways.

When these facts are considered together—and recognizing that the "inquiry into a use of force *has no time limit*"—they demonstrate how a reasonable officer would have understood and responded to the developing situation. *See Barnes*, 145 S. Ct. at 1358 (emphasis added). "Those later, in-the-moment facts cannot be hermetically sealed off from the context in which they arose." *Id*. The officers, with Coborn's life on the line, were required to make split-second decisions while considering all the circumstances in a rapidly unfolding dangerous situation. Therefore, the District Court's analysis of only the shots fired when Coborn was not in "immediate danger" was error, as was the District Court's determination that the officers were not entitled to qualified immunity.[55]

## 2. No clearly established law prohibited shooting Baker after he started the vehicle, put the vehicle into drive, reached down, and then weaponized his vehicle against Coborn.

The District Court erred by failing to analyze the officers' conduct within the proper factual and legal framework. Critically, the court overlooked two dispositive facts: first, that all shots were fired while Baker actively wielded his vehicle as a deadly weapon against Officer Coborn or was headed toward the intersection of two highways, and second, that Baker never relinquished control of this weapon throughout the encounter.[56] These undisputed circumstances fundamentally

---

[55] ROA.3397–3415.
[56] ROA.3405.

distinguish this case from the authorities relied upon by the District Court, rendering those precedents inapplicable and the court's qualified immunity analysis legally flawed.

The District Court's reliance on *Lytle*, 560 F.3d 404 exemplifies this analytical error. The court incorrectly concluded that *Lytle* provided clear notice that Appellants' conduct violated established law. However, *Lytle* offers no such guidance. In that case, disputed facts regarding the vehicle's proximity when the officer discharged his weapon prevented this Court from ruling on qualified immunity altogether. *Id.* at 417. Where factual disputes preclude a qualified immunity determination, the case cannot serve as the kind of clearly established precedent necessary to defeat qualified immunity protection. *See Morrow v. Meachum*, 917 F.3d at 875 ("clearly established law comes from holdings, not dicta"); *Jimerson*, 92 F.4th 277, 280-281 (plaintiffs must cite case law in which an officer acting under similar circumstances was held to have violated a defendant's constitutional rights).

In *Lytle*, officers attempting to stop a suspect driving a stolen vehicle shot at a fleeing car, killing a passenger. 560 F.3d at 407. The driver had fled after crashing his vehicle, then backed out from the wreck and continued fleeing. *Id.* At summary judgment, the parties disputed the critical timing of when the officer fired: the officer claimed he shot while the vehicle was backing toward him, but the plaintiff argued

the officer fired after the vehicle had traveled three to four houses down the street and no longer posed a threat. *Id.* at 412-13. Viewing the facts in the light most favorable to the non-movant, the *Lytle* court found a genuine dispute of material fact regarding whether the fleeing felon was dangerous when the officer fired. *Id.* at 417. Because a jury would need to determine the timing of the shots to assess whether the officer faced danger, the court concluded that factual disputes precluded qualified immunity at summary judgment. *Id.* at 418.

This case presents a stark contrast to *Lytle* because the record contains conclusive video evidence. The footage clearly shows Baker putting the car in gear, illuminating the brake lights while Coborn stood directly in front of the vehicle, driving toward Coborn, narrowly missing him, and then attempting to flee onto a public highway. Unlike in *Lytle*, the video confirms that these officers fired when it was objectively reasonable to believe both Coborn and the public faced imminent danger[57]. *See id.* at 409. Additionally, these officers issued multiple warnings to Baker before firing—a precaution absent in *Lytle*. *Id.* The *Lytle* court explicitly acknowledged that had the officer been able to establish his version of the facts at summary judgment, he would have been entitled to qualified immunity. *Id.* at 412.

---

[57] ROA.1878, 1882, 1887-888, 1987, 1990, 1992-995; *see also* ROA.2023, which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 217; this is video from Officer McHugh's bodycam. *See also* ROA.2024, which is a placeholder for a USB drive that was provided to the District Court as evidence supporting Appellants' Second Motion for Summary Judgment in Doc. 98-1, App. 218; this is video from the officers' dashcam.

Here, with the incident captured on video and material facts undisputed, the officers are entitled to summary judgment. *See id.*

Moreover, *Lytle* predates *Barnes* and thus lacks the comprehensive totality-of-the-circumstances framework that courts must now employ when evaluating officer reasonableness. *See id.*

In addition to *Lytle*, Appellees-Plaintiffs cited *Flores v. City of Palacios, Tex.* and claim that case should have put the officers on notice that shooting Baker was unlawful.[58] 381 F.3d 39. *Flores* is not instructive, as the suspect in that case never used her car as deadly weapon, nor did the officer even suspect she had a weapon. *Id*. at 394-395.

In *Flores*, an officer shot at the car of a sixteen-year-old girl whose infraction was parking on the wrong side of the road. *Id.* at 394-95. As she pulled out non-erratically to enter the correct lane of traffic, her car was shot from behind. *Id.* at 395. She was unaware until after her car was shot that an officer was attempting to stop her. *Id.* The officer tried to convince the court that when he shot at her, "he thought he was in real danger." *Id*. at 399. The court was unconvinced, most critically because the officer was already behind the car when he shot it. *Id*.

Though in this case some of the shots were fired when the officers were behind the car (to protect the officer in front of the car), the other facts are obviously

---

[58] ROA.2313-2314.

different from *Flores*. Miss Flores had done nothing more serious than park on the wrong side of the road; Baker had stolen a car and driven it across four states, resisted arrest, and officers reasonably believed he attempted to use a vehicle as a deadly weapon against a peace officer.[59] Miss Flores was pulling out safely, unaware that an officer was attempting to stop her; Baker was actively fleeing onto a public highway after coming within three feet of striking Coborn.[60] Because Baker posed a serious threat to Coborn and the public, *Flores* does not provide a "robust consensus of cases of persuasive authority" to put the officers on notice that shooting Baker was unreasonable. *See Plumhoff v. Rickard*, 572 U.S. 765, 767 (2014).

Appellees-Plaintiffs also cite to *Edmond v. City of New Orleans*, 1994 U.S. App. LEXIS 42156 as another case that allegedly should have put the officers on notice.[61] However, this Court already held that *Edmond* would not have put Coborn on notice that his conduct was clearly unlawful because Coborn was obviously identified as a law enforcement officer, and Coborn stepped in front of the car before it began to move. *Baker*, 68 F.4th at 246. Furthermore, *Edmond* does not provide notice to officers as it was dismissed for lack of jurisdiction. *Edmond*, 1994 U.S. App. LEXIS 42156, *5-6; 20 F.3d at 1170; *see Morrow*, 917 F.3d at 875; *Jimerson*, 92 F.4th at 280-281.

---

[59] ROA.1616–1617, 1622.
[60] ROA.2032.
[61] ROA.2314.

In *Edmond*, plainclothes officers in an unmarked car cut off the suspects' vehicle. *Id*. at 246 (citing *Edmond*, 1994 U.S. App. LEXIS 42156, *1–2.). The suspects tried to drive past the officers, and when they did, the officers shot the suspects as one of the officers stepped into their path. *Id*. The officers were denied summary judgment based on qualified immunity because there were fact issues as to whether the suspects drove directly at the officers, and the suspects argued they would not have tried to drive away if they had known they were driving away from the police. *Id*. The officers tried to rely on *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992), cert. denied, 506 U.S. 973 (1992) and *Reese v. Anderson*, 926 F.2d 494, 500–01 (5th Cir. 1991), but this Court distinguished those cases because "[i]n both cases…police officers announced who they were before using force." *Id*.

As this Court already found the first time it heard this case, unlike *Edmond*, Officers Coborn and McHugh were in a marked patrol unit with its blue and red lights flashing at the time of the stop.[62] Both officers were wearing their department-issued uniforms.[63] Appellees-Plaintiffs have never argued that Baker was unaware Coborn and McHugh were police officers before they used force.[64] But more importantly, it is undisputed that Coborn was directly in front of the car when he heard Baker shift the car in gear, indicating Baker was about to drive forward, and

---

[62] ROA.485, 1613.
[63] ROA.485, 509.
[64] *See* 2021 Appellants' Brief.; ROA.2270–2287.

the video shows Baker move forward and left while Coborn stood in front of the car. *Compare Edmond*, 1994 U.S. App. LEXIS 42156, \*5 (the evidence was disputed as to whether the officer stepped in front of the moving car).

Finally, Appellees-Plaintiffs identified *White v. Balderama* as a case that allegedly should have put the officers on notice.[65] 161 F.3d 913, 914 (5th Cir. 1998). However, that case does not provide instruction, as this Court dismissed it for lack of jurisdiction. *See Morrow*, 917 F.3d at 875; *Jimerson*, 92 F.4th 277. Furthermore, the discussion in *White* considers the officers' three shots individually, instead of the totality of the circumstances approach required by *Barnes*. *See* 145 S. Ct. at 1356.

## B. The District Court improperly denied qualified immunity by defining "clearly established law" at an impermissibly high level of generality.

*Mullenix v. Luna* holds that officers are entitled to qualified immunity unless there is clearly established precedent that "squarely governs" the specific circumstances of the case. 577 U.S. at 13. "The relevant inquiry is whether existing precedent placed the conclusion that [officers] acted unreasonably in these circumstances beyond debate. The general principle that deadly force requires a sufficient threat hardly settles this matter." *Id.* at 13-14 (citations and quotations omitted).

[65] ROA.2314-315.

Here, the District Court erroneously found that the law was clearly established prohibiting the officers from shooting at Baker. In reaching this conclusion, the court improperly relied on three categories of precedent that do not "squarely govern the case:" (1) cases where vehicles were not used as deadly weapons, (2) cases decided after this incident, and (3) out-of-circuit decisions that do not set forth clearly established law in this jurisdiction.[66] *See id*. at 13.

Over Appellants-Defendants' objection, the District Court adopted the Magistrate Judge's finding that because the officers were on notice on February 21, 2018, that they "may not use deadly force against a person who was fleeing from the officer and did not pose a sufficient threat of harm or immediate danger to the officers or others," the officers are not entitled to qualified immunity.[67] While it is true that police should not shoot unarmed suspects who are not dangerous, it states the law too generally. As stated above, because the Fourth Amendment area is one in which the result depends very much on the facts of each case, the officer is entitled to qualified immunity unless a case "*squarely governs*" the case at hand. *Mullenix*, 577 U.S. at 13 (emphasis in original). The Supreme Court explained as follows:

> To make that showing in the excessive force context, a plaintiff must identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. That is not easy, because clearly established law cannot be defined at a high level of generality. Instead,

---

[66] ROA.3405–3408.

[67] ROA.3397–3417; *see also Baker v. Coborn*, 773 F. Supp. 3d 300, 322 (N.D. Tex. 2025).

> a precedent must squarely govern the facts of the plaintiff's claim; facts that fall in the hazy border between excessive and acceptable force result in qualified immunity.
>
> How clear must fair warning be? For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. The law must be clear enough that, in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately.

*Dawes v. City of Dallas*, No. 22-10876, 2024 U.S. App. LEXIS 7980, *6-7, 2024 WL 2268529 (5th Cir., April 3, 2024), reh'g denied en banc 2024 U.S. App. LEXIS 21048 (Aug. 20, 2024).

This Court instructed in its first opinion in this case that, unless the case "[concerns] the car itself being used as a weapon, …[the] case is unhelpful." *Baker*, 68 F.4th at 246–247. Yet, the cases cited by the Magistrate Judge and adopted by the District Court do not involve a car being used as a weapon nor put the constitutional question beyond debate because they involve cases with dissimilar facts: *Lytle*, 560 F.3d at 413-14 (driver backed towards officer but fact dispute as to how far away the car was when the officer fired); *Flores*, 381 F.3d 391 (officer shot at vehicle to prevent suspect's escape; suspect never used the car as a weapon); *Edmond*, 1994 U.S. App. LEXIS 42156, *5 (undercover police officer stepped in front of moving car and shot at car after it fled) (determined already as factually dissimilar in *Baker*, 68 F.4th at 240); *White*, 153 F.3d 237 (court did not reach a decision but instead

remanded to the district court to issue a supplemental order so the court could determine if it had jurisdiction to decide appeal); *Gragert v. Waybright*, 423 F. App'x 428 (5th Cir. 2011) (appeal dismissed for lack of jurisdiction).

Other cases cited by the District Court[68] could not have put the officers on notice that their conduct was unlawful because they were decided after Baker was shot. *See Pierson v. Ray*, 386 U.S. 547, 557 (1967) ("a police officer is not charged with predicting the future course of constitutional law"). The after-incident cases cannot inform the qualified immunity analysis as a matter of law, regardless of the District Court's assertion that these cases did not affect its reasoning.[69] *See Morrow*, 917 F.3d at 880. Because clearly established law must exist at the time of the alleged violation, after-incident decisions are irrelevant to the qualified immunity analysis. *See id*.

The third group of cases cited are out-of-circuit cases that do not set forth a "robust consensus of persuasive authority" sufficient to put Appellants-Defendants on notice that their conduct was unlawful. *See Morgan v. Swanson*, 659 F.3d 359, 372-373 (5th Cir. 2011) (en banc) (quotations and citations omitted). "In determining whether the [officials] had fair warning, [the court] first looks to the

---

[68] The opinion in *Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022) was issued four years after this incident. The opinion in *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) was issued three years after this incident. The opinion in *Trevino v. Trujillo*, 756 F. App'x. 355 (5th Cir. 2018) was issued the same year as the incident, but after it occurred.
[69] ROA.3407.

Supreme Court and [the Fifth Circuit's] precedent. [The court] need only consider other circuits in the absence of directly controlling authority." *Id*. at 412-413.

As set forth below, this circuit's law is clear regarding the use of deadly force against a suspect who deployed a vehicle as a weapon against an officer. Nevertheless, the District Court overruled Appellants-Defendants' objection to the Magistrate Judge's inclusion of inapplicable out-of-circuit cases.[70][71] And again, the District Court stated the law at an impermissibly high level of generality when it held that "the law in the Fifth Circuit was clearly established as of February 21, 2018, that it was a constitutional violation to shoot a person fleeing the scene in a motor vehicle, where the driver posed no immediate threat to the officers or others."[72] *See Dawes*, 2024 U.S. App. LEXIS 7980, *6-7.

---

[70] ROA.3408.

[71] *Cowan ex. rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003) (fact dispute as to where officer was standing and speed of the car; no video of incident); *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999) (physical evidence and video immediately before the shooting showed officer not in danger); *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005) (car was never directed at an officer); *Smith v. Cupp*, 430 F.3d 766, 770 (6th Cir. 2005) (fact dispute as to whether officer was ever in danger; no video of incident); *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993) (car was not used as a weapon when, after the car made several slow, forward/backward movements to escape, car accelerated and officer stepped in front of car); *Orn v. City of Tacoma, Wash*., 949 F.3d 1167 (9th Cir. 2020) (after 15-minute slow speed escape from a traffic stop, fact dispute as to whether vehicle suddenly accelerated toward officer; no video); *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) (case in support of Appellants-Defendants where officer was entitled to qualified immunity because "the law is not clear on how high the risk of harm to third parties must be before an officer can use a level of force nearly certain to cause death"); and *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003) (during high-speed chase, officer fired into vehicle, striking occupants; vehicle not used as a weapon)

[72] ROA.3407.

Because none of the out-of-circuit cases set forth that the officers' "*particular conduct was unlawful[,]*" qualified immunity is appropriate. *See Morrow*, 917 F.3d at 875 (emphasis added). Therefore, Appellants-Defendants are entitled to qualified immunity.

**C.    Established legal authority overwhelmingly supports qualified immunity for Officers Coborn and McHugh when their use of force is judged by the totality of circumstances surrounding the event.**

Appellees-Plaintiffs must "show the violation of a constitutional right and that the right at issue was clearly established at the time of the alleged misconduct." *Boyd v. McNamara*, 74 F.4th 662, 667 (5th Cir. 2023) (cleaned up). A right is clearly established only if relevant precedent has placed the constitutional question beyond debate. *Ashcroft*, 563 U.S. at 741.

> Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). This standard is particularly demanding in excessive-force cases, where "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts as issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (cleaned up).

Instead of the relevant precedent showing Appellants-Defendants violated clearly established law, the precedent shows they are entitled to qualified immunity. This Court in *Pasco v. Knoblauch*, 566 F.3d 572, 580-581 (5th Cir. 2009), discussed that the Supreme Court "acknowledged [in *Scott v. Harris*, 550 U.S. 372 (2007)] the generally inherent danger that suspects fleeing from police in vehicles pose to the public—even when no bystanders or other motorists are immediately present." The Supreme Court recognized the "two evils" an officer faces when a suspect attempts to flee: harming a fleeing, reckless suspect or allowing innocent parties to be injured. *Scott*, 550 U.S. at 384; *see also Barnes* 145 S. Ct. at 1363 (Kavanaugh, J., concurring, joined by Thomas, J., Alito, J., and Barrett, J.).

In *Estevis v. Cantu*, a unanimous opinion, the Court held that, as of April 9, 2020, it was not clearly established law that officers acted unreasonably by firing at a suspect who, during a stop following a high-speed chase, tried to continue his flight. 134 F.4th at 795. Similar to the District Court in this case, the district court in *Estevis* divided the shots into groups and found immunity for only some of the shots. *Id*. at 794. This Court found that to overcome the officers' qualified immunity, "squarely governing precedent had to place the excessiveness of shots 4-9 beyond debate." *Id*. at 797. Like the District Court in this case, the *Estevis* district court relied heavily on *Lytle*. Both district courts read *Lytle* for the proposition that officers cannot shoot at a suspect who has driven away from them if the officers have enough

time to realize the fleeing car was no longer a threat.[73] *Id*. at 798. However, that "reads *Lytle* too generally." *Id*.

"To begin with, there was no video in *Lytle* and so we had to accept the plaintiff's version of the facts." *Id*. at 797.

> The suspect in *Lytle* was fleeing down an open road and already three or four houses away when the officer fired. By contrast, Estevis was boxed in by police, had just rammed a police car and driven into a fence, and showed no signs of giving up. On these facts—which are plain from the videos—the officers had good reason to believe they were still under threat from an erratic suspect who seconds earlier had decided to use his truck as a 5,000-pound weapon.

*Id*. at 797–798.

*Estevis* presents facts that are substantially more analogous to this case than those in *Lytle*. Baker, like Estevis, showed no signs of giving up, which is clear from the videos. Officers Coborn and McHugh had good reason to believe "they were still under threat from an erratic suspect who seconds earlier had decided to use [the stolen Infiniti] as a [] weapon." *See id*. This case is not like *Lytle* where Baker was "fleeing down an open road and already three or four houses away when the officer[s] fired." *See id*.

---

[73] ROA.3399 ("qualified immunity did not protect law enforcement officers when they fire at fleeing people in a vehicle after an imminent risk of serious bodily harm had passed.")

In *Irwin v. Santiago*, a unanimous, unpublished opinion, the Court held that, as of June 8, 2018, it was not clearly established law that officers acted unreasonably by firing at a vehicle when one officer was standing near the front of the vehicle and in its projected path. 2021 U.S. App. LEXIS 31692, at *7-8. Although the Court acknowledged that a reasonable factfinder could conclude the officer violated the Fourth Amendment because he was not in immediate danger from the driver's failure to stop, it nonetheless held that qualified immunity applied. *Id.* The Court determined that

> there is no clearly established law demonstrating that the officers' conduct constituted an excessive use of force. The particular facts that are material here—Irwin's failure to heed officers' commands to stop, Officer Santiago's position, and the brief period of time it took for the Officers to perceive and react to the direction of Irwin's vehicle—are not sufficiently analogous to the facts of our cases finding excessive force such that officers Santiago and Roberts would have been "on notice" that their conduct was unconstitutional.

*Id.*

Here, there is no dispute—and the video evidence supports—that Officer Coborn was standing *directly* in front of the car when the officers opened fire. Though the case is persuasive and not precedential, *Irwin v. Santiago* shows that the law was not clearly established on February 21, 2018, that police officers cannot shoot at the driver of a vehicle who ignored officer commands, started the engine and shifted the vehicle into gear while an officer stood directly in front of

the vehicle, missed the officer by only three feet, and then tried to flee onto an intersection of two highways.

Because the relevant precedent does not indicate these officers violated clearly established law, they are entitled to qualified immunity.

## VI.

## <u>CONCLUSION</u>

Based on the totality of circumstances, Officers Coborn and McHugh acted reasonably in using deadly force against Baker, and no precedent clearly established that their conduct was unlawful. The District Court therefore erred in denying qualified immunity, particularly by artificially segmenting the officers' actions instead of evaluating the continuous encounter as required by *Barnes*. Therefore, the District Court erred in denying summary judgment to Appellants-Defendants because they are entitled to qualified immunity.

## VII.

## <u>PRAYER</u>

Appellants-Defendants Richard Keith Coborn and Michael Joseph McHugh respectfully request that this Court reverse the District Court's denial of summary judgment for Appellants, render judgment for Appellants, and dismiss Appellees-Plaintiffs' claims in their entirety.

Respectfully submitted,

SPROUSE SHRADER SMITH, PLLC
John F. Massouh, TBN 24026866
Email: john.massouh@sprouselaw.com
Blair Saylor Oscarsson, TBN 24056073
Email: blair.oscarsson@sprouselaw.com
701 S. Taylor Street, Suite 500 (79101)
P.O. Box 15008
Amarillo, Texas 79105-5008
Tel: (806) 468-3300; Fax: (806) 373-3454

/s/ *Blair Saylor Oscarsson*_____
Blair Saylor Oscarsson

**Attorneys for Defendants-Appellants**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 5, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the ECF system which sends notification of such filings to the parties that are registered or otherwise entitled to receive notice in this action, including the following:

    Jeff Edwards
    Email: jeff@edwards-law.com
    Scott Medlock
    Email: scott@edwards-law.com
    David James
    Email: david@edwards-law.com
    EDWARDS LAW

    Brian Yoakum
    Email: byoakum@evanspetree.com
    EVANS PETREE PC

                                */s/ Blair Saylor Oscarsson*
                                  Blair Saylor Oscarsson

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

1. This Appellants' Brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(A) because this Brief contains 8,197 words, excluding the parts of the Brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This Appellants' Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 365 in Times New Roman 14-point size.

/s/ *Blair Saylor Oscarsson*
Blair Saylor Oscarsson