No. 25-10545

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**IRA DARLINA BAKER, individually, as the administratrix of the ESTATE OF DARION DEV'ON BAKER, and on behalf of all wrongful death beneficiaries of DARION DEV'ON BAKER; MARIO BAKER; ARLANDRA WILLIFORD,**

*Plaintiffs-Appellees,*

v.

**RICHARD KEITH COBORN and MICHAEL JOSEPH McHUGH;**

*Defendants-Appellants.*

**On Appeal from the United States District Court
Northern District of Texas, Amarillo Division**
Civil Action No. 2:19-cv-77
Honorable Matthew J. Kacsmaryk, District Judge, presiding

### BRIEF OF PLAINTIFFS-APPELLEES

Respectfully submitted,
By: /s/ Jeff Edwards
   JEFF EDWARDS
   TX State Bar No. 24014406
   DAVID JAMES
   TX State Bar No. 24092572
   EDWARDS LAW
   603 W. 17th St.
   Austin, TX 78701
     Phone: (512) 623-7727
    Fax:   (512) 623-7729

Brian Yoakum
TN State Bar No. 024811
EVANS PETREE PC
1715 Aaron Brenner Dr., Ste. 800
Memphis, TN 38120
   Phone: (901) 525-6781
   Fax:   (901) 521-4606

**ATTORNEYS FOR PLAINTIFFS-APPELLEES**

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-Appellees:
Ira Darlina Baker
Mario Baker
Arlandra Williford, on behalf of her minor child, C.W.

Plaintiffs' Counsel
Jeff Edwards
David James
Lisa Snead
Michael Singley
Paul Samuel
Brian Yoakum

Defendants-Appellants:
Richard Keith Coborn
Michael Joseph McHugh

Defendants-Appellants' Counsel:
Blair Saylor Oscarsson
John F. Massouh

Former Defendant Below:
City of Stratford, Texas

By:    /s/ Jeff Edwards
        JEFF EDWARDS
        State Bar No. 24014406
        jeff@edwards-law.com
        MIKE SINGLEY
        State Bar No. 00794642
        mike@edwards-law.com
        DAVID JAMES
        State Bar No. 24092572
        david@edwards-law.com
        LISA SNEAD
        State Bar No. 240622.04
        lisa@edwards-law.com
        PAUL SAMUEL
        State Bar No. 24124463
        paul@edwards-law.com

EDWARDS LAW
603 W. 17th St.
Austin, Texas 78701
  Tel.  (512) 623-7727
  Fax.  (512) 623-7729

Brian Yoakum
TN State Bar No. 024811

EVANS PETREE PC
1715 Aaron Brenner Dr., Ste. 800
Memphis, TN 38120
  Phone: (901) 525-6781
  Fax:  (901) 521-4606

**ATTORNEYS FOR PLAINTIFFS-APPELLEES**

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees respectfully request oral argument because this case presents important factual details that were disputed below and that bear upon the District Judge's order. Discussion of those details in oral argument is likely to assist the Court's review.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.................................................................ii

STATEMENT REGARDING ORAL ARGUMENT .........................................iii

TABLE OF AUTHORITIES ................................................................. vi

I.   JURISDICTIONAL STATEMENT ................................................. 1

II.  STATEMENT OF THE ISSUES PRESENTED.................................... 1

III. STATEMENT OF THE CASE ...................................................... 2

   A.  Evidence in the Record ...................................................... 2

     1. Coborn and McHugh shot and killed Baker as he slowly drove away........... 2

     2. Evidence refutes Coborn and McHugh's purported justifications for shooting. ................................................................. 16

   B.  Procedural Posture ......................................................... 17

IV.  SUMMARY OF ARGUMENT.................................................... 20

V.   STANDARD OF REVIEW ...................................................... 22

VI.  ARGUMENT ...................................................................... 23

   A.  Coborn and McHugh attack evidence sufficiency, so they fail to invoke interlocutory appellate jurisdiction. ......................................... 23

     1. Baker never used the sedan as a weapon...................................... 25

     2. Baker's flight posed no immediate public safety threat. .............................. 31

   B.  This Court and the District Court correctly determined that Coborn and McHugh's shots were objectively unreasonable in light of the totality of the circumstances. ..................................................... 33

     1. Baker did not reach for anything. .............................................. 37

2. The police dash-camera shows Coborn fired before the sedan moved. ....... 38

3. The parties dispute which officer killed Baker and when. ......................... 39

4. Both officers saw that the sedan never endangered anyone. ...................... 41

**C.  Coborn and McHugh are not entitled to qualified immunity. ............... 43**

1. Genuine disputes of fact preclude qualified immunity................................ 44

2. Binding precedent informed Coborn and McHugh that their conduct was unconstitutional. ................................................................................... 44

3. Persuasive and intervening precedent shows the law was clearly established at the time of this shooting. ......................................................... 50

4. A consensus of authority outside this circuit independently shows the law was clearly established. ................................................................ 56

**VII.  CONCLUSION ......................................................................... 59**

**CERTIFICATE OF SERVICE ........................................................ 61**

**CERTIFICATE OF COMPLIANCE ................................................ 62**

# TABLE OF AUTHORITIES

## CASES

*Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999) ...................................................... 57

*Acosta v. City & Cty. of San Francisco*, 83 F.3d 1143 (9th Cir. 1996) ................. 57

*Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007) ...................................................... 58

*Amador v. Vasquez*, 961 F.3d 721 (5th Cir. 2020) ........................................... 24, 26

*Ambler v. Nissen*, 116 F.4th 351 (5th Cir. 2024) ....................................... 24, 26, 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 245 (1986) ........................................... 24

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ............................................................... 43

*Bagley v. Guillen*, 90 F.4th 799 (5th Cir. 2024) ......................................... 24, 26, 39

*Baker v. Coburn*, 68 F.4th 240 (5th Cir. 2023) ............................................... *passim*

*Barnes v. Felix*, 605 U.S. 73 (2025) ......................................................... 21, 36, 41

*Bazan v. Hidalgo Cnty., Tex.*, 246 F.3d 481 (5th Cir. 2001) ............... 24, 29, 37, 53

*Benavides v. Nunez*, 144 F.4th 751 (5th Cir. 2025) ................................................. 33

*Byrd v. City of Bossier*, 624 Fed. App'x 899 (5th Cir. 2015) ................................. 30

*Byrd v. Cornelius*, 52 F.4th 265 (5th Cir. 2022) ......................................... 24, 26, 38

*Chacon v. Copeland*, 577 Fed. App'x 355 (5th Cir. 2014) ..................................... 30

*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) ..................... 1, 21, 23, 24, 32, 36, 44

*Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009) ............................................. 58

*Cowan ex. rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003) ............... 56

*Curran v. Aleshire*, 800 F.3d 656 (5th Cir. 2015) ....................................... 24, 26, 38

*Darden v. City of Fort Worth, Tex.*, 880 F.3d 722 (5th Cir. 2018)................... 30, 43

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)............. 23, 32

*Ducksworth v. Landrum*, 62 F.4th 209 (5th Cir. 2023) ................................... 24, 26

*Edmond v. City of New Orleans*, 20 F.3d 1170, 1994 WL 144782 (5th Cir. 1994)
........................................................................................................ 22, 47, 48, 50

*Edwards v. Oliver*, 31 F.4th 925 (5th Cir. 2022)........................... 24, 30, 51, 53, 54

*Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993) ......................................... 57

*Estevis v. Cantu*, 134 F.4th 793 (5th Cir. 2025) ................................................... 55

*Flores v. City of Palacios*, 270 F.Supp.2d 865 (S.D. Tex. 2003)..................... 47, 49

*Flores v. City of Palacios, Tex.*, 381 F.3d 391 (5th Cir. 2004) ................. 22, 46, 47

*Free v. Abbott Labs., Inc.*, 164 F.3d 270 (5th Cir. 1999) ....................................... 33

*Good v. Curtis*, 601 F.3d 393 (5th Cir. 2010)....................................................... 24

*Gragert v. Waybright*, 423 Fed. Appx. 428 (5th Cir. 2011) ................................. 54

*Graham v. Connor*, 490 U.S. 386 (1989) ....................................................... 21, 34

*Hope v. Pelzer*, 536 U.S. 730 (2002)..................................................................... 43

*Irwin v. Santiago*, No. 21-10020, 2021 WL 4932988 (5th Cir. Oct. 21, 2021)...... 54

*Johnson v. Jones*, 515 U.S. 304 (1995) ................................................................... 1

*Johnson v. Louisiana Dep't of Agric.*, 18 F.3d 318 (5th Cir. 1994) ...................... 33

*Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) ................................. 32, 34, 50, 52

*Kirby v. Duva*, 530 F.3d 475 (6th Cir. 2008)........................................................ 57

*Lytle v. Bexar County, Tex.*, 560 F.3d 404 (5th Cir. 2009).........................................
............................................................... 22, 26, 35, 36, 44, 45, 49, 51, 53

*Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268 (5th Cir. 2015)...........
.......................................................................... 23, 24, 36, 37, 38, 53

*McCoy v. Alamu*, 950 F.3d 226 (5th Cir. 2020) ..................................................... 43

*Murray-Ruhl v. Passinault*, 246 Fed. Appx. 338 (6th Cir. 2007)........................... 57

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012) ........................................... 24, 43

*Orn v. City of Tacoma, Wash.*, 949 F.3d 1167 (9th Cir. 2020) .............................. 57

*Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021)...................................... 41

*Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011) ......................................... 57

*Roque v. Harvel*, 993 F.3d 325 (5th Cir. 2021) ............................... 30, 36, 37, 43, 50

*Sanchez v. Fraley*, 376 Fed. Appx. 449 (5th Cir. 2010) ........................................ 38

*Saucier v. Katz*, 533 U.S. 194 (2001) ..................................................................... 57

*Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005)......................................................... 57

*Tamez v. City of San Marcos, Tex.*, 62 F.3d 123 (5th Cir. 1995) .......................... 24

*Tennessee v. Garner*, 471 U.S. 1 (1985)................................................................ 36

*Todd Shipyards Corp. v. Auto Transp.*, 763 F.2d 745 (5th Cir. 1985) ................... 33

*Tolan v. Cotton*, 572 U.S. 650 (2014)............................................................... 23, 44

*Trevino v. Trujillo*, 756 Fed. Appx. 355 (5th Cir. 2018) ........................................ 53

*Tubar v. Clift*, 286 Fed. Appx. 348 (9th Cir. 2008)............................................... 58

*Tubar v. Clift*, 453 F. Supp. 2d 1252 (W.D. Wash. 2006)...................................... 58

*Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003)................................................... 58

*Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2004) ............................................... 57

*White v. Balderama*, 161 F.3d 913 (5th Cir. Nov. 30, 1998) ........................... 41, 53

*White v. Pauly*, 137 S.Ct. 548 (2017) ...................................................... 43

*Wigginton v. Jones*, 964 F.3d 329 (5th Cir. 2020)................................... 43

*Williams v. Riley*, 392 Fed. Appx. 237 (5th Cir. 2010) .......................... 33

## STATUTES

28 U.S.C. § 636................................................................................. 23

CAL. PENAL CODE § 1170 .................................................................. 34

CAL. PENAL CODE § 487 .................................................................... 34

TEX. PENAL CODE § 12.35 .................................................................. 34

TEX. PENAL CODE § 38.04 .................................................................. 34

## RULES

5TH CIR. RULE 47.5.3 ......................................................................... 47

## I.     JURISDICTIONAL STATEMENT

Defendants-Appellants fail to invoke this Court's jurisdiction with their interlocutory appeal from the denial of summary judgment based on qualified immunity. Appellate courts do not have interlocutory jurisdiction to decide questions of evidence sufficiency, but Defendants-Appellants' issues rely on assertions of fact which are disputed by admissible evidence. *Johnson v. Jones*, 515 U.S. 304, 309 (1995). As this Court previously held, "[t]he plaintiffs have established genuine disputes of material fact regarding whether the officers' use of force was excessive and objectively unreasonable." *Baker v. Coburn*, 68 F.4th 240, 251 (5th Cir. 2023). On remand, the District Court concluded that "one of the factual disputes precluding summary judgment here [is] whether Baker was using the vehicle as a deadly weapon against Coborn." ROA.3404, 3408, 3410. Thus, this Court does not have interlocutory jurisdiction. *See*, *e.g.*, *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc); *see infra* pp. 23–33.

## II.    STATEMENT OF THE ISSUES PRESENTED

1.    Where this Court previously found "genuine disputes of material fact regarding whether the officers' use of force was excessive and objectively unreasonable," including as to Defendants-Appellants' arguments about whether Baker ever posed a threat to Coborn or the public, have Defendants-Appellants failed

to invoke this Court's interlocutory jurisdiction by repeating those same two arguments? *Baker*, 68 F.4th at 249, 251.

2.     Where this Court previously held "a jury could reasonably find that McHugh and Coborn violated Baker's Fourth Amendment right to be free from excessive force," *Baker*, 68 F.4th at 251, did the District Court correctly deny summary judgment because genuine disputes of fact are material to Defendants-Appellants' qualified immunity defenses?

## III.     STATEMENT OF THE CASE

### A.     Evidence in the Record

#### 1.     *Coborn and McHugh shot and killed Baker as he slowly drove away.*

Defendants-Appellants Richard Coborn and Michael McHugh shot 23-year-old Darion Baker in the back as he slowly drove away through a parking lot.

On February 20, 2018, Baker and his friend, Gregory Dees, ran out of money while on vacation in California, and foolishly stole a sedan to drive back to their home in Memphis, Tennessee.[1] On February 21, 2018, around 7:00 pm, they approached the small town of Stratford, Texas.

Coborn and McHugh were police officers for the City of Stratford watching traffic from their police SUV when they saw the sedan driven by Baker and Dees.

---

[1] ROA.2591; ROA.2923; ROA.2931.

Though the sedan did not do anything illegal or dangerous, Coborn and McHugh decided to follow it into town, and observed it stop at a Pilot gas station to the left of a gas pump.[2] After Baker and Dees exited the sedan and entered the convenience store to purchase gas, Coborn and McHugh recorded its license plate, then called their dispatcher.[3]

The dispatcher informed the officers that the sedan had been stolen. McHugh then called the reporting police department in the City of Inglewood, California, where he learned the sedan had been taken from a parking lot when the owner left it running as she went inside a drug store—it was not a car-jacking, and no violence was used to steal the sedan.[4] Coborn and McHugh believed the car theft was non-violent[5] and that neither Baker nor Dees had committed any violent crime.[6]

Coborn and McHugh then parked their SUV next to the Pilot convenience store entrance, near the parked sedan.[7] Coborn exited the police SUV and went

---

[2] ROA.2402-2403; ROA.2526; *see also* ROA.2325 at 1:29. Times referenced in the Pilot surveillance footage are the time elapsed from the beginning of the recording.

[3] *See* ROA.2325 at 1:39–2:09; ROA.2524.

[4] ROA.2524-25.

[5] ROA.2397, 2399-2400; ROA.2525, 2529; *see also* ROA.2923; ROA.2931.

[6] ROA.2397; ROA.2525.

[7] ROA.2325 at 12:10.

inside the store where he observed Baker and Dees.[8] Coborn, Baker, and Dees then left the convenience store at approximately the same time, with Coborn climbing back into the SUV as Baker and Dees approached the parked sedan.[9] At this time, there were no other people in the gas station parking lot near the parked sedan.[10]

As Baker and Dees approached the sedan, Coborn pulled the police SUV out of its parking spot.[11] Baker entered the parked sedan's driver-side door, sat down, and closed the door, as Dees picked up the gas pump and the police SUV began to turn around.[12] The SUV's police lights turned on and Coborn pulled the SUV up behind the parked sedan.[13]

Coborn and McHugh leaped from the SUV, immediately drew their guns, and ran towards the parked sedan.[14] Terrified, Dees dropped the gas pump, opened the

---

[8] ROA.2325 at 12:16.

[9] ROA.2325 at 13:32–13:33.

[10] *See* ROA.2409; *see also* ROA.2325 at 13:33.

[11] ROA.2325 at 13:37; ROA.2329 at 0:20.

[12] ROA.2325 at 13:48.

[13] ROA.2325 at 13:50; ROA.2329 at 0:33. Times referenced in the police dash-camera footage are the time elapsed from the beginning of the recording.

[14] ROA.2325 at 13:53; ROA.2329 at 0:35; ROA.2608.

passenger door, climbed inside the sedan, and closed the door.[15] The officers yelled, "Hey!" at Dees and Baker,[16] but never warned that they were about to be shot or told them to get out of the car.[17] Baker and Dees never said anything to the officers, and the officers admitted they never made any verbal threats.[18]

Next, Coborn ran to the driver's door, while McHugh ran to the passenger's door.[19] Coborn was aware that, at all relevant times, McHugh remained on the passenger's side of the sedan.[20] Coborn never believed McHugh was in any danger from his position next to the passenger's door.[21]

Coborn struck the driver's window with the barrel of his gun, trying to break the window.[22] The officers yelled, "let me see your hands," and "roll the window

---

[15] ROA.2325 at 13:53; ROA.2329 at 0:35–0:36; ROA.2608.

[16] ROA.2329 at 0:35.

[17] ROA.2329 at 0:35; ROA.2342 at 0:00–0:08. Times referenced in McHugh's body camera are the time elapsed from the beginning of the recording.

[18] ROA.2421; ROA.2536.

[19] ROA.2534.

[20] ROA.2420.

[21] ROA.2421.

[22] ROA.2325 at 14:00; ROA.2329 at 0:43; *see also* ROA.2762.

down," but never "get out of the car."[23] Dees complied, holding his hands up in a "surrender" position.[24]

Coborn then moved in front of the sedan and stood directly at the sedan's mid-point, pointing his gun at Baker.[25] The sedan's brake lights illuminated as Baker started the engine.[26] Coborn claimed that once he was in front of the sedan, he saw Baker's "hand go from the ignition to the center area of the vehicle,"[27] but examination of the sedan reveals that Coborn could not have possibly seen Baker's hands anywhere below the very top of the steering wheel from his position in the front of the sedan.[28]

McHugh then yelled, "you go forward …" but was interrupted by gunfire.[29]

---

[23] ROA.2614; ROA.2342 at 0:04.

[24] ROA.2533-34.

[25] ROA.2329 at 0:47; ROA.2325 at 14:04; ROA.2608, 52.

[26] ROA.2325 at 14:03; ROA.2329 at 0:46.

[27] ROA.2422.

[28] ROA.2999, ¶ 4.

[29] ROA.2342 at 0:05.

Based on the dash-board camera video, Coborn opened fire first, discharging four bullets before the sedan even moved,[30] though Coborn testified the sedan moved first.[31]

Meanwhile, both Dees and McHugh testified they saw that Baker ducked down, getting "almost his whole body down" "below the dash" "as if he might be trying to get out of the line of fire," while shifting the sedan into drive from the gear-shift in the console between the seats.[32] Both officers admitted that after Baker ducked down and to his right (by the gear shift), his body stayed down in the "ducking" position.[33]

Before the sedan moved, Baker turned the wheel hard to the left.[34] When the sedan began to move, it "immediately" and "automatically" turned left.[35] In the gas

---

[30] ROA.2329 at 0:47–0:49. Since Coborn failed to activate his own body-worn camera, only the sound of gunshots reflects when he began to shoot. ROA.2374; ROA.2757.

[31] *Compare* ROA.2422 *with* ROA.2329 at 0:47–0:49.

[32] *See* ROA.2535-36; ROA.2653.

[33] ROA.2535-36, 64-65; ROA.2428-29.

[34] ROA.2618, 49-50. Defendants-Appellants' suggestion that the sedan moved "forward" rather than immediately left improperly disputes this fact, thus exceeding interlocutory jurisdiction. Appellant Br., pp. 5, 18; *see infra* pp. 23–26, 29.

[35] ROA.2617-18, 2650.

station and police dash camera videos, the sedan's front wheels can be seen turning hard left before it began to move.[36]



ROA.2328; ROA.2325 at 14:05 (sedan wheel turned left)

Thus, the sedan never went straight forward.[37] Both officers' testimony conflicts with multiple angles of video in this regard—and with one another. McHugh claimed the sedan "lunge[d]" "a couple of feet" straight ahead before turning left, which the videos disprove.[38] Coborn testified he stood only "six inches" from the front of the sedan when it started moving, which would have made McHugh's version of events

---

[36] ROA.2325 at 14:05; ROA.2329 at 0:48–49.

[37] ROA.2650; *see also* ROA.2325 at 14:05–14:06; ROA.2329 at 0:48–0:49.

[38] *Compare* ROA.2325 at 14:05-7 *with* ROA.2537.

impossible because the sedan did not touch Coborn.[39] In any event, they are both wrong: Coborn fired into the front grill of the sedan at a flat angle so that he stood at least eight feet from the sedan when he first fired.[40] One reconstruction states the sedan was likely closest to Coborn when its front passenger-side corner swung by him, approximately three feet from his gun—so his body was always over five feet away, as he held his gun at arms' length.[41]

Coborn's distance from the sedan is also evident by comparing Coborn's position to the change in pavement textures, which marks approximately where the sedan's front wheels started, as he ran roughly parallel to that line in the pavement:

---

[39] ROA.2427-28.

[40] ROA.2998-2999, ¶ 3; ROA.2031, 43, ¶ 13.

[41] ROA.2032, 43, ¶ 13. Defendants-Appellants exceed the Court's jurisdiction by repeatedly misstating the meaning of the three-foot measurement and its significance. Appellant Br., pp. 10, 15, 18, 23, 34; *see infra* pp. 23–24, 26–28.



ROA.2331; ROA.2329, at 0:047 (red line indicating change in pavement texture)



ROA.2344; ROA.2342 at 0:07 (red arrow indicating distance between red line at change in pavement texture where sedan began and Coborn's position)

Coborn's distance from the sedan also meant that McHugh had an unobstructed view of Coborn throughout the sedan's movement and McHugh

therefore saw the sedan was moving away from his partner.[42] Indeed, McHugh testified he maintained awareness of Coborn's position.[43]

McHugh agreed he did not have justification to shoot after the sedan was pulling away from Coborn.[44] Nevertheless, McHugh opened fire (after he heard Coborn's shots[45]) beginning when the sedan was already pointed away from Coborn and moving further to the left.[46] McHugh himself testified he did not begin shooting until the front passenger's side window passed him to avoid shooting Dees, intending to shoot at Baker through the back passenger and rear windows.[47] Thus, McHugh knew Coborn was not in danger from the sedan because, if McHugh had mistakenly thought Coborn was in the sedan's path, then McHugh would have also mistakenly believed his plan to shoot through the rear windows risked hitting

---

[42] ROA.2999, ¶ 7.

[43] ROA.2528, 36, 43.

[44] ROA.2549-50.

[45] ROA.2565.

[46] ROA.2329 at 0:49–50; *see also* ROA.2332-2348 (showing the exhaust, recoil, and ejected cartridge cases from McHugh's weapon).

[47] ROA.2537-38.

Coborn—so he would not have shot at all.[48] The sedan turned left and slowly drove away, passing Coborn without ever touching him.[49]

Both officers continued shooting at the sedan even after it was fully past Coborn. The police dash-camera video shows McHugh's hands flinched and shell casings ejected into the air as he fired five shots, all after the sedan had already passed by Coborn.[50] Coborn also continued shooting after the sedan drove past him.[51] Even after the sedan and Coborn left the view of the police dash camera, Coborn kept shooting at it.[52] Inside the sedan, Baker sat "straight up," to drive the sedan away.[53] A civilian dash camera recorded video from across the street; this video shows after turning left, the sedan drove slowly towards the exit and turned right to enter the roadway.[54]

---

[48] ROA.2999-3000, ¶ 8.

[49] ROA.2325 at 14:04–14:07; ROA.2329 at 0:47–0:51; ROA.2428.

[50] ROA.2329 at 0:50–0:51; ROA.2332-2341.

[51] ROA.2329 at 0:49–0:50; *see also* ROA.2430; ROA.2841-43, 2886-2921 (showing crime scene "tents" marking expended cartridge cases across the parking lot); ROA.2770.

[52] ROA.2329 at 0:57 (sound of two gunshots).

[53] ROA.2653.

[54] ROA.2345 at 6:31:12–6:31:30 (civilian dash-camera).

Then, as Coborn continued shooting outside, Baker suddenly exclaimed to Dees, "G, they shot me."[55] The sedan then, as it crossed the gas station exit, slowed down—as if it was still shifted into "drive," but no one was depressing the gas pedal—and stopped turning.[56] Coborn testified the sedan slowed "after our initial gunshots."[57] It began simply "rolling," not accelerating.[58]

During this time, the civilian dash camera captured Coborn's movements: he caught up to the sedan, pointed his gun at the driver's side, circled behind the sedan and to the passenger side, then—after he walked away from the sedan—again pointed his weapon at the rear of the sedan.[59] Although the civilian video has no sound, while Coborn chased after the sedan, two more distant shots are audible on McHugh's body-worn camera.[60] Dees also testified that the gunfire continued until just before the sedan came to rest across the street.[61] Bullet holes were later found not just through the two rear windows and in the front of the sedan, but also pairs of

---

[55] ROA.2622, 52.

[56] ROA.2325 at 14:08; ROA.2345 at 6:31:29–32.

[57] ROA.2434.

[58] ROA.2620-21.

[59] ROA.2345 at 6:31:12–6:31:34; ROA.3116, 18, 20.

[60] ROA.2325 at 14:07; ROA.2329 at 0:55–0:56; *see* ROA.2431, 36; ROA.2655.

[61] ROA.2654-55.

bullet holes were found in the body of the rear passenger door,[62] in the trunk of the sedan,[63] on the driver's side,[64] and *inside* the front passenger door[65] (so police fired two shots after Dees reopened that door[66]). Coborn fired a total of fifteen times, with most of his spent cartridge cases found away from the gas station stall area where the encounter began.[67] At least five of Coborn's shots were fired in the driveway.[68]

Because the sedan immediately turned left and the parking lot was empty in that direction, there was no one in its path when it was shot from the sides and from the rear.[69]

Critically injured, Baker lost control of the car, which drifted across the

---

[62] ROA.2877-83 (various views of two bullet holes in back passenger door).

[63] ROA.2846-50 (showing two bullet holes in the trunk of the sedan); *see also* ROA.2944; ROA.2962 (summarizing the bullet holes in the sedan).

[64] ROA.2852-57 (showing two bullet holes in the front driver's side of the sedan).

[65] ROA.2884-85 (showing two bullet holes inside the passenger door); *see* ROA.2034.

[66] ROA.2034.

[67] ROA.2795; ROA.2939-40; ROA.2372; ROA.2961; *see also* ROA.2832-33 (matching thirteen expended cases to Coborn's weapon).

[68] ROA.2954-55; ROA.2039; ROA.2961. Defendants-Appellants' brief exceeds the Court's interlocutory jurisdiction by incorrectly claiming there were only two shots fired as Coborn ran after the sedan. Appellant Br., p. 6; *see infra* pp. 23–24, 39–40.

[69] ROA.2325 at 13:50–14:08; ROA.2329 at 1:10–1:16; ROA.2342 at 0:22.

unoccupied Pilot parking lot, across the adjacent road, and into the empty Toot'n Totum lot, where it collided with a barrier at low speed, coming to a stop.[70]

Baker and Dees were unarmed—there was no gun in the car.[71]

Two shots hit Baker. One, non-fatal shot hit the back of his shoulder.[72] The second, fatal shot travelled through the middle of Baker's back, collapsed his left lung, paralyzed him, and caused him to die at the scene.[73] Based on damage to Baker's body and the vehicle, the killing shot most likely hit Baker while he bent forward or ducked down in the driver's seat, with the fatal bullet coming from the rear or rear-passenger quadrant of the sedan.[74]

Baker is survived by his parents, Plaintiffs-Appellees Darlina and Mario Baker, and his minor son, C.W. (represented by the child's mother and next friend, Plaintiff-Appellee Arlandra Williford).

---

[70] *See* ROA.2654-55; *see also* ROA.2329 at 1:18–1:25; ROA.2325, at 14:07–14:10.

[71] *See* ROA.2565.

[72] ROA.2784, 86-88; ROA.3026, 34; *see also* ROA.2840 (showing one bullet wound in Baker's upper left shoulder, and one in his mid-back).

[73] ROA.2784, 87-88 (bullet exits two inches *above* where it entered); ROA.3028, 30.

[74] ROA.3043-44, ¶¶ 2–3.

### 2. *Evidence refutes Coborn and McHugh's purported justifications for shooting.*

Coborn and McHugh assert they opened fire only to allegedly defend Coborn, not out of concern for any other bystanders.[75] Each officer testified that Baker posed no other threat; he never threatened or actively endangered McHugh or any bystanders.[76] The video demonstrates the sedan's path away from the officers was empty of people and traffic—and the sedan drove so slowly that Coborn caught up to it on foot.[77] Indeed, each officer chose to fire *toward* the glass store fronts of the nearby, occupied gas stations, presenting an actual danger to the public, unlike the slowly fleeing vehicle.[78] Coborn and McHugh's claimed justification directly conflicts with Dees' testimony and the video showing the sedan had its wheels turned left, away from Coborn, before it moved.[79]

Immediately after the shooting, Coborn told McHugh he began firing because he saw Baker "reach[] for something, I couldn't help it," after the sedan was already

---

[75] ROA.2410-11, 2439-40; ROA.2529-30.

[76] ROA.2409-11, 2430-31, 2437, 2439-40; ROA.2548-50.

[77] ROA.2326 at 1:30–2:37; ROA.2345 at 6:31:13–6:31:48. Defendants-Appellants exceed this Court's interlocutory jurisdiction by repeatedly arguing that Baker presented an ongoing threat to public safety by driving away. *Contra* Appellant Br., pp. 10, 19, 21, 32; *see infra* pp. 23–24, 30–33.

[78] ROA.2999, ¶¶ 5–6; *see* ROA.2409, 2453.

[79] ROA.2617-18, 49-50; *Baker*, 68 F.4th at 249.

put in drive.[80] Dees testified this did not happen.[81] Moreover, the shape and size of the sedan would have prevented Coborn from seeing Baker reach for anything while Coborn stood in front of the sedan.[82] Coborn later changed his story to argue he needed to shoot at Baker when the car "lunged" towards him,[83] but the videos show this also did not happen.[84]

### B.    Procedural Posture

This § 1983 case was filed on April 15, 2019 by Baker's survivors. Doc. 1.

On August 18, 2020, Defendants—at that time, including the City of Stratford—moved for summary judgment.[85] The District Court granted their motion for summary judgment on March 11, 2021.[86]

After Plaintiffs appealed, the Fifth Circuit reversed in part on May 17, 2023. *Baker v. Coburn*, 68 F.4th 240, 251 (5th Cir. 2023). This Court found that a jury

---

[80] ROA.2342 at 4:08–4:09; ROA.2801, ¶ 12.26; ROA.2806, ¶ 16.4(x).

[81] ROA.2653.

[82] ROA.2999, ¶ 4. Defendants-Appellants exceed this Court's interlocutory jurisdiction by arguing that Coborn perceived that Baker "dipped down" to retrieve a weapon. *Contra* Appellant Br., pp. 10, 18; *see infra* pp. 23–24, 37–38.

[83] ROA.2422.

[84] ROA.2325 at 14:05; ROA.2329 at 0:48.

[85] ROA.239.

[86] ROA.1613.

could conclude any shots Coborn fired "before the car began to move" were unreasonable, but that there was not clearly established law governing those shots, and therefore affirmed in part as to the "first round of shots before the sedan had moved." *Baker*, 68 F.4th at 244, 246–247, 249. As to the "second round of shots—when the sedan began to move away from Coborn," this Court concluded that summary judgment evidence showed "Baker attempted to drive away from Coborn, and when Baker safely did so, Coborn and McHugh continued to fire in an attempt to capture Dees and Baker," so that "the officers acted unreasonably when they fired" after the sedan had moved. *Id*. at 244, 251. The Fifth Circuit reversed as to those shots. *Id.* at 251.

On remand, the parties re-examined the crime scene evidence and developed conflicting expert reports as to which officers struck and killed Baker.[87]

On July 10, 2024, Coborn and McHugh moved for summary judgment again, but narrowly focused on two arguments: that Coborn did not "seize" Baker because they claimed all of Coborn's shots missed Baker and that neither officer violated clearly established law because "Baker appeared to be using the vehicle as a weapon to run over Coborn."[88] Notably, Defendants-Appellants attached to their own motion one of Plaintiffs' expert reports which concluded that Baker's "vehicle presented no

---

[87] ROA.2955; ROA.2033, 37-38; ROA.1704-23; *see* ROA.3408-9.

[88] ROA.1795-1801.

threat to Coborn at the time that McHugh fired all of his shots; Coborn was clear of the front of the car at that time."[89]

Plaintiffs responded in opposition on August 12, 2024.[90]

On January 29, 2025, the Magistrate Judge recommended denial of Defendants-Appellants' second motion for summary judgment, as summary judgment evidence showed "Defendants continued to shoot into the center of the trunk, in the rear window, and in the center console of the middle of the back seat as Baker was driving away from them," and that one or both of the officers seized Baker with these shots, so that the officers violated clearly established law.[91]

On February 12, 2025, Defendants-Appellants objected that the Magistrate Judge (1) did not "find that the second round of shots were fired 'when the sedan began to move away from Coborn;'" (2) defined clearly established law too generally; and (3) concluded "that a factual dispute exists regarding which officer seized Baker."[92] Plaintiffs-Appellees responded in opposition.[93]

---

[89] ROA.2043.

[90] ROA.2270-3053. The parties also briefed Defendants-Appellants' unsuccessful *Daubert* challenge to one of Plaintiffs-Appellees' experts which was not raised in this appeal. *See* ROA.3076-3124; ROA.3303-9; ROA.3341-69.

[91] ROA.3283-3289.

[92] ROA.3295, 3298.

[93] ROA.3341-3369.

On March 26, 2025, the District Court overruled Defendants-Appellants' objections and adopted the Magistrate Judge's recommendation, as well as reasoning that "one of the factual disputes precluding summary judgment here [is] whether Baker was using the vehicle as a deadly weapon against Coborn."[94]

Defendants-Appellants filed their notice of appeal on April 21, 2025.[95]

## IV.   SUMMARY OF ARGUMENT

The District Court's order denying summary judgment should be affirmed for three reasons.

First, the Defendants-Appellants fail to invoke this Court's interlocutory jurisdiction, as they argue their preferred facts, rather than limiting their appeal to the materiality of the fact disputes found by the District Court. Defendants-Appellants fail to concede the genuine fact dispute identified by this Court and the District Court about Baker ever using the vehicle as a weapon.[96] *Baker*, 68 F.4th at 251. Defendants-Appellants also attempt to revive their assertion from the first appeal that public safety was at risk, yet this Court already found that issue was disputed based on the same evidence. *Baker*, 68 F.4th at 249. Thus, this appeal

---

[94] ROA.3404, 3414.

[95] ROA.3416.

[96] ROA.3289; ROA.3404.

should be dismissed for lack of jurisdiction. *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc).

Second, the District Court and this Court correctly found admissible evidence that this shooting was objectively unreasonable, and both Courts never applied a "time limit," but instead considered the totality of the circumstances known to each officer at the time of each of their shots pursuant to *Graham v. Connor*, 490 U.S. 386, 396 (1989)—thus complying with the Supreme Court's subsequent decision in *Barnes v. Felix*, 605 U.S. 73, 80 (May 15, 2025). Both officers knew Baker was only suspected of a non-violent felony;[97] Baker's resistance was limited to non-compliance and flight;[98] and there was no immediate threat because all of the shots fired that could have possibly injured Baker were fired from behind the fleeing sedan, as Baker was shot twice in the back;[99] each officer saw that the sedan was already pointed away from or completely past Coborn;[100] and each officer knew the

---

[97] ROA.2524-25, 29; ROA.2397, 2399-2400; *see also* ROA.2923; ROA.2931.

[98] ROA.2325 at 13:53; ROA.2329 at 0:35–0:36; ROA.2421-23, 73; ROA.2536.

[99] ROA.2784, 86-87; ROA.2840; ROA.2939-40, 48, 55; ROA.3043-44, ¶¶ 2–3, 6; ROA.2332-2348; ROA.2325 at 14:04–14:10; ROA.2329 at 0:47–0:52; ROA.2342 at 0:01–0:07; ROA.2345 at 6:31:11–6:31:39; *see* ROA.2537-38; ROA.2654-55.

[100] ROA.2955; ROA.2999, ¶ 7; ROA.2043, ¶ 12; *see* ROA.2428; ROA.2537-38; ROA.2654-55.

sedan's path was empty of bystanders and traffic.[101] *Baker*, 68 F.4th at 244, 248, 249.

Third, ample binding precedent, as well as a consensus of persuasive authority, instructs that shooting at a fleeing vehicle from behind under these circumstances—when the car is slowly, safely driving away and there is no immediate danger—is unconstitutional. *See, e.g.*, *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409, 417–418 (5th Cir. 2009); *Flores v. City of Palacios, Tex.*, 381 F.3d 391, 404 (5th Cir. 2004); *Edmond v. City of New Orleans*, 20 F.3d 1170, 1994 WL 144782, *1 (5th Cir. 1994). Defendants-Appellants cite only decisions about officers facing active threats; those cases do not obscure the clearly established law.

Accordingly, this Court should dismiss the appeal or, if it reaches the merits, affirm the District Court's order.

## V.    STANDARD OF REVIEW

Within the Court's "limited scope" of interlocutory jurisdiction, review of a denial of summary judgment as to the materiality of the fact disputes is generally *de novo*; however, where a party fails to raise an issue in their objections to a Magistrate Judge's report and recommendation, that issue is reviewed only for plain error. *Cole*,

---

[101] ROA.2409-11, 2430-31, 2437, 2439-40; ROA.2529-30, 48-50; ROA.2326 at 1:30–2:37; ROA.2345 at 6:31:13–6:31:48.

935 F.3d at 452; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

"When reviewing a motion for summary judgment, we must view all the facts in the light most favorable to the non-moving party and draw all reasonable inference in [their] favor." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 274 (5th Cir. 2015). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (reversing grant of summary judgment in police shooting case where material facts were disputed).

The rule in cases where defendants seek qualified immunity is the same: "courts must be careful not to define a case's 'context' in a manner that imports genuinely disputed factual propositions" when analyzing whether the law was clearly established. *Tolan*, 572 U.S. at 656–7.

## VI. ARGUMENT

### A. Coborn and McHugh attack evidence sufficiency, so they fail to invoke interlocutory appellate jurisdiction.

Defendants-Appellants' brief fails to raise pure legal issues and instead implicates the genuineness of fact disputes, so they have failed to invoke this Court's limited interlocutory jurisdiction and this appeal should be dismissed.

This Court only "ha[s] jurisdiction for the interlocutory appeal *if* it challenges the *materiality* of factual issues, but lacks jurisdiction *if* it challenges the district

court's *genuineness* ruling—that *genuine issues* exist concerning *material facts*." *Bazan v. Hidalgo Cnty., Tex.*, 246 F.3d 481, 490 (5th Cir. 2001) (emphasis in original). "A fact is '*material*' if it *might affect* the outcome of the suit under the governing law." *Id.* at 489 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 245, 248 (1986)) (emphasis in original). Thus, this Court can only review the District Court's order if Coborn and McHugh limit their challenge to whether the fact disputes are "material," not whether the disputes are "genuine."

On interlocutory review, Coborn and McHugh must accept the facts as described by the District Court—an "alternative set of facts" is "beyond [the Court's] jurisdiction to consider." *Cole*, 935 F.3d at 452, 455; *see also Good v. Curtis*, 601 F.3d 393, 398 (5th Cir. 2010); *Edwards v. Oliver*, 31 F.4th 925, 930 (5th Cir. 2022). Coborn and McHugh instead urge this Court to improperly rely "entirely on the officers' account of events." *Mason*, 806 F.3d at 276. This jurisdictional defect extends to fact questions that underlly each of Coborn and McHugh's issues and therefore requires dismissal of their appeal.[102] While Defendants-Appellants' brief

---

[102] *See, e.g.*, *Ambler v. Nissen*, 116 F.4th 351, 364 (5th Cir. 2024) (dismissing appeal from denial of qualified immunity from excessive force claims due to genuine fact disputes); *Bagley v. Guillen*, 90 F.4th 799, 804 (5th Cir. 2024) (same); *Ducksworth v. Landrum*, 62 F.4th 209, 213 (5th Cir. 2023) (same); *Byrd v. Cornelius*, 52 F.4th 265, 272, 274 (5th Cir. 2022) (same); *Amador v. Vasquez*, 961 F.3d 721, 730 (5th Cir. 2020) (same); *Bazan*, 246 F.3d at 492 (same); *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015) (same); *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (same); *Tamez v. City of San Marcos, Tex.*, 62 F.3d 123, 125 (5th Cir. 1995) (same).

relies on multiple slanted facts, *see supra* pp. 7, 9, 14, 16, 17, nn.34, 41, 68, 77, 82, *all* of their arguments center upon attempting to contradict two material disputed facts: Baker never used the sedan as a weapon and never posed an ongoing risk to public safety. Admissible evidence supports both fact disputes, precluding interlocutory appellate jurisdiction.

### 1.    *Baker never used the sedan as a weapon.*

Despite this Court's and the District Court's identification of genuine disputes of material fact surrounding the lack of danger posed by Baker's driving, all three issues raised by Coborn and McHugh's brief in this appeal improperly rest upon their disputed assertion that Baker "weaponized" the sedan. Appellant Br., pp. 10–12, 15, 19, 22–23, 26–27, 29, 32. This Court previously held that Plaintiffs' "evidence, if credited by the jury, could contradict the officers' claims that they only fired at Baker when there was a threat of imminent danger." *Baker*, 68 F.4th at 248. The District Court denied the officers' dispositive motion specifically because it "merely illuminates one of the factual disputes precluding summary judgment here: whether Baker was using the vehicle as a deadly weapon against Coborn." ROA.3404. This Court and the District Court properly concluded that Baker never weaponized the sedan for seven reasons.

First, the videos—the Pilot surveillance video and the police dash-camera—directly show that when the sedan first moved, its wheels were already pointed to

the left, causing the sedan to immediately turn away from Coborn and drive past him so he was never in danger—while McHugh stood to the passenger side and watched as the sedan turned away from Coborn.[103] McHugh admits he saw where Coborn was standing.[104] Since the sedan was not "immediately" endangering the officers, shooting at it was objectively unreasonable. *Lytle*, 560 F.3d at 417–18. Because the video contradicts the officers' claims that this movement, which would never have hit Coborn, nonetheless "weaponized" the sedan, their effort to argue facts contrary to those shown by the video requires dismissal of this interlocutory appeal. *See, e.g.*, *Amador v. Vasquez*, 961 F.3d 721, 728–29 (5th Cir. 2020) (dismissing qualified immunity appeal where video contradicted officers' version of events). Even if the videos were unclear on this point, this would be a genuine dispute of fact because (as this Court already held) a reasonable jury could agree that the videos show no danger after the sedan moved, *see Baker*, 68 F.4th at 249, so this appeal should be dismissed.[105]

---

[103] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48.

[104] ROA.2518, 36, 43.

[105] *See, e.g.*, *Ambler*, 116 F.4th at 364 (dismissing qualified immunity appeal due to lack of interlocutory jurisdiction arising from fact dispute despite video evidence); *Bagley*, 90 F.4th at 804 (same); *Bisetti v. McMorrow*, No. 22-50948, 2023 WL 4421383, at *1, n.1 (5th Cir. July 10, 2023) (same); *Ducksworth*, 62 F.4th at 213 (same); *Byrd*, 52 F.4th at 274 (same); *Amador*, 961 F.3d at 724, n.1 & 730–731 (same); *Scott v. White*, 810 Fed. App'x 297, 299, 301–302 (5th Cir. 2020) (same); *Curran*, 800 F.3d at 660, 664 (same).

Second, Defendants-Appellants' brief attempts to explain the assertion that Baker "weaponized" the sedan in only one clause based on the un-cited factual assertion that Baker drove "within three feet of" Coborn, but that factual assertion is simply incorrect. Appellant Br., p. 10. Defendants-Appellants' false "three feet" assertion is present throughout their brief, and at one point is coupled with the false assertion that Plaintiffs "admitted" to it, citing only to a measured estimate cherry-picked from one of Plaintiffs' experts' reports which Defendants-Appellants filed at ROA.2032. Appellant Br., pp. 10, 15, 18, 23, 34. An estimate by an expert is not an admission, but, in any event, Defendants-Appellants' brief mischaracterizes the significance of the three-foot value. On that record page, the expert explains she is estimating the gun's "Approximate *Muzzle* to Target Distance from Vehicle," not *Coborn*'s distance to the target.[106] Thus, the expert estimates at the time of one of Coborn's shots (probably his third or fourth shot, out of his fifteen total shots), Coborn held his gun so that *the muzzle* was three horizontal feet from the corner of the turning sedan—whereas the same report estimates *Coborn* was likely standing at least five feet away as he held the gun in front of his body.[107]

---

[106] ROA.2032 (emphasis added); *see also* ROA.2030-31 (explaining how she estimated this); ROA.2048 (demonstrative diagram showing horizontal muzzle to target distance).

[107] ROA.2043, ¶ 13.

Third, the ballistic-based distances are conservative estimates; the videos suggest Coborn was even further away. McHugh's body-worn camera shows Coborn running in parallel to the gas station stalls at least ten feet from the change in pavement texture that marks approximately where the sedan's front wheels started the encounter.[108] *See supra* pp. 9–10.

Fourth, Coborn's mere distance from the sedan during one of his shots does not demonstrate the sedan was "weaponized." To the contrary, even based on the ballistics evidence of the sedan's distance from Coborn while it pulled away from both officers, Plaintiffs' experts have opined that McHugh saw that Coborn's position was not threatened by the sedan's projected path.[109]

Fifth, McHugh's own testimony is evidence that he perceived the sedan physically could not be heading towards Coborn. McHugh admitted that he fired only after the "B pillar" behind the front passenger's side window had passed him to avoid shooting the passenger, Dees.[110] But this admission means that McHugh already knew he was shooting through the sedan's rear windows from behind towards the front of the sedan. As Plaintiffs' policing expert points out, that

---

[108] ROA.2938; *compare* ROA.2329 at 0:047, *and* ROA.2331, *with* ROA.2342 at 0:07; *and* ROA.2344.

[109] ROA.2999, ¶ 7; ROA.2043, ¶ 12.

[110] ROA.2546.

knowledge necessarily means McHugh realized Coborn was not in front of the sedan—otherwise, McHugh's plan would have been foolhardy, as it would have involved shooting toward the position McHugh (allegedly) believed Coborn was standing in front of the sedan.[111] Thus, McHugh could not have believed the sedan was acting like a weapon by the time he fired.

Sixth, while the video and physical evidence directly contradicts both officers' claimed versions of events, their stories also conflict with one another, creating a fact issue by themselves. McHugh claimed the sedan "lunge[d]" "a couple of feet" straight ahead before turning left.[112] Coborn, in contrast, testified he stood only "six inches" from the front of the sedan when it started moving, but admitted the sedan never touched him.[113] These two stories are both soundly contradicted by physical and video evidence discussed above—but they are also mutually exclusive and thus impair both officers' credibility, which is material. *See Bazan*, 246 F.3d at 493.

Finally, Dees also testified, contrary to the officers, and consistent with the video, that the sedan "made an immediate left" rather than going straight forward.[114]

---

[111] ROA.2999-3000, ¶ 8.

[112] *Contra* ROA.2537.

[113] ROA.2427-28.

[114] ROA.2617-18, 50.

All of this evidence overwhelmingly supports the District Court's finding admissible evidence that Baker never used the vehicle as a weapon. ROA.3404. Perhaps the officers perceived something else, but in that case the jury needs to address whether the officers' misperception was reasonable. *See, e.g.*, *Ambler*, 116 F.4th at 364 (no jurisdiction where video did not resolve whether officer knew suspect was in medical distress); *Edwards*, 31 F.4th at 930 (no jurisdiction where video did not resolve whether officer mistakenly believed that the sound of shattering glass was from incoming gunfire); *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 730 (5th Cir. 2018) (reversing grant of summary judgment where video did not resolve whether officers realized suspect was in medical distress); *Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (video did not resolve fact dispute whether officer perceived suspect had dropped handgun); *Byrd v. City of Bossier*, 624 Fed. App'x 899, 904 (5th Cir. 2015) (fact dispute whether officers perceived arrestee "flailing or grasping for a branch," rather than resisting arrest); *Chacon v. Copeland*, 577 Fed. App'x 355, 361 (5th Cir. 2014) (video did not resolve fact dispute whether officers perceived 911 caller was not the suspect).

### 2.    *Baker's flight posed no immediate public safety threat.*

Despite not raising the issue of public safety whatsoever in their second motion for summary judgment,[115] or their objections to the Magistrate Judge,[116] the Defendants-Appellants errantly argue that Baker posed such an inherent "risk to public safety" that the officers were justified in shooting him in the back—even as the sedan slowly rolled away while Coborn continued to shoot as he shuffled alongside it. Appellant Br., pp. 10, 19, 21, 32. As this Court already found, "it is not clear that a reasonable officer would have perceived such a danger." *Baker*, 68 F.4th at 249. This un-preserved argument is plainly outside interlocutory jurisdiction— and it fails to identify plain error for three reasons.

First, Coborn and McHugh themselves testified there was no immediate threat to public safety in their depositions.[117]

Second, the Pilot's security camera and the civilian camera across the street show no bystanders near the sedan's path.[118] The two videos also show that the sedan moved so slowly that Coborn caught up to it on foot within seconds.[119]

---

[115] ROA.1795-1801.

[116] ROA.3295-3301.

[117] ROA.2430-31; ROA.2439; ROA.2548-49.

[118] ROA.2325 at 13:34–14:34; ROA.2345, at 6:31:11–6:31:48.

[119] ROA.2325 at 14:06–14:09; ROA.2345 at 6:31:11–17.

Finally, the forensic evidence demonstrates Coborn did not just run near the sedan, but also had enough time to stop, aim, and shoot the vehicle at least four times at point blank range as it traversed the gas station driveway.[120] One expert opines that Coborn's last shot occurred after he ran back up the driveway and then shot at least one more time as the vehicle slowly crossed the roadway.[121]

Defendants-Appellants' assertion of a public danger is thus meritless—as well as not preserved and outside this Court's interlocutory jurisdiction. *Cole*, 935 F.3d at 452; *Douglass*, 79 F.3d at 1428–29.

Accordingly, none of the officers' appeal properly invokes interlocutory jurisdiction. "Relitigating the district court's assessment of factual disputes is not our role on interlocutory review." *Cole*, 935 F.3d at 457; *see also Joseph v. Bartlett*, 981 F.3d 319, 336 (5th Cir. 2020) (appellate court may not "reconsider the district court's factual determinations"). That principle is particularly apt in this matter because *this Court* previously found the exact same fact disputes, with the same video evidence, in a previous appeal—and the District Court on remand, where Defendants-Appellants tried to relitigate one of those disputes, agreed with the Court

---

[120] ROA.2954-55, 2961; *see* ROA.2039; ROA.3116, 18.

[121] ROA.2034, n.4; ROA.2039; *see* ROA.2345 at 6:31:35; ROA.3120 (Coborn adopting a shooting stance).

of Appeals. *Baker*, 68 F.4th at 242-243, 248-249, 251.[122] The law-of-the-case

precludes further litigation of that fact dispute before trial. *Johnson v. Louisiana*

*Dep't of Agric.*, 18 F.3d 318, 323 (5th Cir. 1994) (reversing summary judgment on

qualified immunity where prior appellate decision identified disputed material

facts); *Williams v. Riley*, 392 Fed. Appx. 237, 241 (5th Cir. 2010) (dismissing appeal

from denial of qualified immunity where prior appellate decision identified disputed

material facts).[123]

The Court should therefore dismiss this appeal for lack of jurisdiction.

**B.     This Court and the District Court correctly determined that Coborn and McHugh's shots were objectively unreasonable in light of the totality of the circumstances.**

Coborn and McHugh violated Baker's right to be free from excessive force.

In excessive force cases, a plaintiff must demonstrate (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.

*Benavides v. Nunez*, 144 F.4th 751, 755 (5th Cir. 2025) (internal quotation marks

---

[122] ROA.3404.

[123] *See also Todd Shipyards Corp. v. Auto Transp.*, 763 F.2d 745, 750 (5th Cir. 1985) ("The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal."); *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272 (5th Cir. 1999) ("Once a panel of this court has decided an issue of law or fact, the decision continues to govern all subsequent stages of the same case.").

omitted).

Here, there is no dispute that Baker was injured—the officers' bullets tore through his body, collapsing a lung and causing him to suffer fatal cardiorespiratory arrest.[124] There is also no dispute that at least one of the officers' bullets caused Baker's injuries, and Defendants-Appellants have not appealed the District Court's conclusion finding "a genuine dispute of material fact as to which officer shot Baker." ROA.3410. The only element on appeal is whether each of the officers' shots as the sedan drove safely away from Coburn were excessive and unreasonable.

"The test for reasonableness is not capable of precise definition or mechanical application," and courts apply three factors in assessing the reasonableness of an officer's use of force: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Joseph*, 981 F.3d at 332 (citing *Graham*, 490 U.S. at 396).

As to the first factor, the crime was a felony, but not particularly severe. In California (where the car was stolen), theft of a car is likely punishable by no more than three years imprisonment. CAL. PENAL CODE §§ 487 & 1170(h). In Texas, evading arrest is a state jail felony, punishable by no more than two years imprisonment. TEX. PENAL CODE §§ 38.04(b)(1)(B) & 12.35(a). These crimes did

---

[124] ROA.2784, 86-87; ROA.3030.

not, without more, justify deadly force. *See, e.g.*, *Lytle*, 560 F.3d at 407, 418 (denying qualified immunity for shooting, despite subject being a car thief suspected of threatening violence who engaged in high-speed chase). Coborn agreed the officers did not suspect Baker and Dees of any violence.[125]

As to the third factor, resistance, Baker did not comply with the officers' commands and then attempted to flee, although Baker's flight is less significant if the jury determines he only drove away *after* Coborn started shooting at him. *See Baker*, 68 F.4th at 249 ("If Baker ducked down to avoid being shot instead of reaching for a gun as Coborn feared, it does not appear that the use of deadly force, or the continued use of it as the car drove away, would have been required.").

This Court considered the first and third factors to weigh against Baker in its original decision, but held that "the second factor—whether there is an immediate threat to safety—is generally the most important factor in determining the objective reasonableness of an officer's use of deadly force." *Baker*, 68 F.4th at 247–248.

This Court's prior decision remains a correct, binding holding on that question. Deadly force to prevent the escape of an apparently unarmed suspected felon "may not be used unless it is necessary to prevent [a suspect's] escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471

---

[125] ROA.833.

U.S. 1, 3 (1985) (emphasis added); *see also Cole*, 935 F.3d at 453. Courts must "expressly" assess "whether [the officer's] use of his firearm was justified throughout the encounter." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015). "[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Roque*, 993 F.3d at 333 (citing *Lytle*, 560 F.3d at 413). "At some point … even in the most difficult circumstances, the reasonableness rope ends." *Roque*, 993 F.3d at 329.

None of these binding statements of the law is altered by *Barnes v. Felix*, which held that "the 'totality of the circumstances' inquiry into a use of force has no time limit." 605 U.S. 73, 80 (2025). Defendants-Appellants argue that the District Court ran astray of *Barnes* by examining some shots separately from others, but as *Barnes* expressly states:

> Of course, the situation at the precise time of the shooting will often be what matters most; it is, after all, the officer's choice *in that moment* that is under review. But earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones.

*Id.* at 80 (emphasis added). Thus, *Barnes* embraces the intuitive logic that Defendants-Appellants conceded to below: officers must be able to justify "using

deadly force every time [they] pull the trigger."[126] *Mason*, 806 F.3d at 277; *Roque*, 993 F.3d at 333.

Here, four fact disputes are material to the reasonableness of this shooting.

### 1.    *Baker did not reach for anything.*

Although Coborn originally claimed he fired because he saw Baker reaching for something he believed to be a weapon after putting the sedan in drive,[127] three pieces of evidence contradict this account.

First, Dees disputes that Baker ever reached down again after he put the sedan into drive[128]—and testified Baker never reached below the seat (of course, there was no gun there to reach for).[129] Thus, Dees contradicts Coborn's original story.

Second, Coborn himself contradicted this story. Although he still testified that he could see Baker reaching for the gear shift through the front windshield, he instead testified that he fired because the sedan moved toward him—not because of the reaching.[130] Coborn's shifting justification alone undermines his credibility, which creates a dispute of material fact. *See, e.g.*, *Bazan*, 246 F.3d at 493 (finding

---

[126] ROA.2389-90; ROA.2549.

[127] ROA.2342 at 4:08–4:09; ROA.2801, ¶ 12.26; ROA.2806, ¶ 16.4(x).

[128] ROA.2653.

[129] ROA.2653.

[130] ROA.2422.

discrepancies within officers' characterizations of details of the shooting supported a fact issue).

Third, examination of the sedan revealed that Coborn's original explanation *and* his later testimony about seeing Baker reach for the gear shift are both physically impossible—when looking through the front windshield, the dash obscures the driver's hands so Coborn could not see if Baker reached for anything.[131]

This material fact dispute precludes granting summary judgment to the officers on the "reaching for something" justification. *See*, *e.g.*, *Mason*, 806 F.3d at 276 (fact dispute between officer and non-party witness who claimed deceased did not reach for gun in his waistband); *Sanchez v. Fraley*, 376 Fed. Appx. 449, 451–52 (5th Cir. 2010) (unpublished) (same). The videos cannot resolve this dispute of fact, as nothing inside the sedan is recorded. *See, e.g.*, *Byrd*, 52 F.4th at 274 (video showing resistance did not show when or if resistance ended, so material fact dispute remained precluding qualified immunity); *Curran*, 800 F.3d at 664 (surveillance video where alleged resistance is obscured does not resolve dispute of material fact).

> **2.**     ***The police dash-camera shows Coborn fired before the sedan moved.***

Coborn and McHugh testified that they opened fire only after the sedan

---

[131] ROA.2999, ¶ 4.

moved,[132] but gunshots can be heard on the police SUV's dash-camera *before* the sedan moved.[133] Coborn agreed that, if the sedan was in fact stationary when he started shooting, the shooting was unlawful.[134] Accordingly, a jury may conclude that both McHugh and Coborn would have perceived the gunshots to precede the sedan's movement, notwithstanding their testimony to the contrary. *See, e.g.*, *Bagley*, 90 F.4th at 803 (fact dispute where sound on video could permit jury to infer detainee used turn signal, contrary to officer's contention). As this Court previously observed in this case, the reasonableness of the initial shooting—while not itself a basis for liability[135]—is relevant to whether Baker was ducking (and driving away) to dodge Coborn's unprovoked gunfire, rather than to merely evade arrest—which further undercuts any possible threat from his flight. *See Baker*, 68 F.4th at 249, 251.

### 3. *The parties dispute which officer killed Baker and when.*

Although all of the shots were unreasonable, another dispute is at what time during the sequence of twenty shots the injurious and fatal bullets were fired, and

---

[132] ROA.2422; ROA.2539.

[133] ROA.2329 at 0:47–0:49.

[134] ROA.2422-23, 73 (use of deadly force would be unjustified, "because … before the vehicle was moving, there was no threat of immediate bodily harm or injury").

[135] Both due to the lack of clearly established law regarding shots fired before the sedan moved, *Baker*, 68 F.4th at 250, and due to the fact that Baker was shot in the back, not through the front of the sedan. *See* ROA.3044, ¶ 4.

which officer fired shots that hit Baker. This fact dispute is particularly material because a jury could find it was one of Coborn's last shots that killed Baker—when the officers' claim about a threat is most tenuous. The District Court correctly found this fact is genuinely disputed, [136] and Defendants-Appellants do not contend otherwise in this appeal.

In summary, one of Plaintiffs' experts opines that Coborn, not McHugh, killed Baker, during a sequence of five shots fired as Coborn ran after the slowly fleeing sedan. [137] This corroborates Dees' recollection that Baker announced he was shot *after* completing the left turn and took his hands off the wheel at that time. [138] On video, the sedan made a right turn *before* Coborn caught up to the sedan from behind and circled to its passenger side. [139] After that point, only after Coborn returned to a position to potentially fatally shoot Baker, the sedan idled forward without further driver input. [140] This is consistent with Baker being fatally shot and releasing the wheel at that moment—long after McHugh stopped firing—because the fatal shot also damaged Baker's spine and caused paralysis: "[t]his would explain why Baker

---

[136] ROA.3408-3410.

[137] ROA.2955.

[138] ROA.2652-54.

[139] ROA.2345 at 6:31:25–31.

[140] ROA.2345 at 6:31:31–47; ROA.2955; ROA.3044, ¶ 3.

failed to take evasive action thereby causing the vehicle to collide at low speed with a metal post."[141] Other experts opine that McHugh likely killed Baker.[142]

This is a material dispute of fact about "which of the [twenty] bullets fired by [the officers] actually struck and injured [Baker], what direction [Baker]'s car was heading in …, and whether [the officers] acted reasonably in continuing to shoot at [Baker]'s vehicle after the first shot" which requires denial of summary judgment. *White v. Balderama*, 161 F.3d 913, 914 (5th Cir. 1998) (dismissing appeal from denial of qualified immunity due to dispute about which shot struck a fleeing driver).[143] In this case, each successive bullet is less likely to be found reasonable than the last—and indeed each officer conceded the immediate threat ended when Baker was driving away.[144]

### 4. *Both officers saw that the sedan never endangered anyone.*

As discussed above, a key fact dispute in this case is whether a reasonable jury could conclude that the sedan never menaced Coborn at all, and both officers perceived that it posed no danger to anyone, contrary to both officers' asserted

---

[141] ROA.3032.

[142] ROA.1720; ROA.2042.

[143] *White* is also not overruled by *Barnes* for the reasons discussed above. *See supra* pp. 35–36.

[144] ROA.2452; ROA.2549.

claims, *see supra* pp. 25–31, and contrary to their un-preserved claim that it endangered the public. *See supra* pp. 31–33. The officers concede the sedan never endangered McHugh.[145]

This fact dispute is material. Both officers agreed that "there has to be an immediate threat of bodily harm or injury" to use deadly force, and they must stop using deadly force when the threat ends.[146] Binding precedent shows that the end of the threat from a fleeing vehicle is critical to the reasonableness of continued deadly force. *See infra* pp. 44–50. On appeal, Defendants-Appellants' entire brief depends on the disputed assertion that Baker used the sedan as a "weapon," implicitly conceding that fact is material. Appellant Br., pp. 10–12, 15, 19, 22–23, 26–27, 29, 32.

Accordingly, genuine disputes of material fact continue to control; in light of the totality of the circumstances, "the objective reasonableness of the officers' fear of Baker is dependent upon the acceptance of their account of the shooting" so that "a jury could reasonably find that McHugh and Coborn violated Baker's Fourth Amendment right to be free from excessive force." *Baker*, 68 F.4th at 249. 251.

---

[145] ROA.2421; ROA.2548-49.

[146] ROA.2423; ROA.2554-55; ROA.2726-27.

**C.    Coborn and McHugh are not entitled to qualified immunity.**

Baker's constitutional rights were clearly established at the time, so McHugh and Coborn are not entitled to qualified immunity.

The purpose of the "clearly established" prong of the qualified immunity analysis is to ensure "that every reasonable official would have understood that what he [or she] is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal citations omitted). Constitutional rights are "clearly established" by "controlling authority—or a robust consensus of cases of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Wigginton v. Jones*, 964 F.3d 329, 355 (5th Cir. 2020). The right's "contours must be sufficiently clear that a reasonable officer would understand what they are doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "[I]n light of pre-existing law the unlawfulness must be apparent." *Id*. A plaintiff, however, does not need to produce "a case directly on point." *Darden*, 880 F.3d at 727; *see also Newman v. Guedry*, 703 F.3d 757, 763–764 (5th Cir. 2012); *McCoy v. Alamu*, 950 F.3d 226, 233 (5th Cir. 2020). And "in an obvious case, general standards can clearly establish the answer, even without a body of relevant caselaw." *Roque*, 993 F.3d at 335 (citing *White v. Pauly*, 137 S.Ct. 548, 551 (2017)). The District Court correctly held that Plaintiffs-Appellees satisfy this standard for four reasons.

### 1.    *Genuine disputes of fact preclude qualified immunity.*

As an initial matter, Defendants-Appellants' entire discussion of clearly established law depends upon their disputed assertion that Baker tried to attack Coborn and posed a public safety risk, but, as discussed above, the District Court and this Court have already concluded that a reasonable jury could find the sedan was never a threat. *See supra* pp. 23–33. In assessing if the factual context is analogous to clearly established law, "courts must be careful not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 572 U.S. at 657. "If an excessive force claim turns on which of two conflicting stories best captures what happened on the street, the caselaw will not permit summary judgment in favor of the defendant official. A trial must be had." *Cole*, 935 F.3d at 455–456. Thus, Defendants-Appellants' reliance on glaring fact disputes about weaponizing the vehicle and public safety undermines this Court's jurisdiction over their interlocutory appeal and requires denial of qualified immunity.

### 2.    *Binding precedent informed Coborn and McHugh that their conduct was unconstitutional.*

Controlling Fifth Circuit authority informed Coborn and McHugh "it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others. This holds as both a general matter, and in the more specific context of shooting a suspect fleeing in a motor vehicle." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417–18 (5th Cir. 2009). At

least three binding decisions from the Fifth Circuit clearly established this holding in an analogous factual context before this February 21, 2018 shooting.

First, in *Lytle*, 560 F.3d at 409, a sheriff's deputy shot at a car as it drove away, "there were no bystanders in the path of the vehicle, and … neither the [car] nor any of its occupants posed a threat of harm to [the deputy] or others"—just like here. In *Lytle* the driver "made threats of violence," was allegedly driving a stolen car, "was [known to be] on bond for charges of … unlawfully carrying a weapon," "had left a known drug location," "had led [the deputy] on a high-speed chase through a residential area with children playing somewhere nearby," "had collided with an occupied car," and was driving away through the same residential area when the officer began shooting. *Id.* at 413. Moments before the shooting, the fleeing car had backed down a driveway towards the officer. *Id.* at 409. *Id.* Like here, the officer "did not issue a warning before firing." *Id.* The Fifth Circuit expressly found a constitutional violation: "were a jury to accept [Plaintiffs'] version of the facts, it could conclude that [the officer] had violated [the decedent's] clearly established constitutional right to be free from an unreasonable seizure." *Id.* at 418.

*Lytle* put both Defendants-Appellants on specific notice that they could not shoot Baker. Indeed, the driver in *Lytle* was far more threatening than Baker, as that suspect was not only in a stolen car but also threatened someone, engaged in a dangerous car chase, and unlawfully carried a weapon. *Lytle*, 560 F.3d at 407. Here,

Coborn and McHugh only believed Baker and Dees had committed car theft, but did not suspect they were violent or armed.[147] Further, in *Lytle* the car had previously hit another motorist during a twenty-minute high-speed chase and, only seconds before, nearly struck the officer who fired. *Lytle*, 560 F.3d at 414. Here, the police dash camera shows that Coborn started shooting before the sedan moved, then McHugh began firing after the sedan had turned left, clear of Coborn.[148] Similar to the specific facts of *Lytle*, both Coborn and McHugh fired into the sedan from behind, and Baker was hit twice in the back such that the officers were necessarily behind him.[149] And, just like in *Lytle*, there were no bystanders in Baker's path. *Id.* at 409.[150]

Second, in *Flores v. City of Palacios, Tex.*, the Fifth Circuit affirmed denying qualified immunity to an officer who shot a fleeing car from behind. 381 F.3d 391, 399 (5th Cir. 2004). Though the car—parked illegally on the wrong side of the road —was "pull[ing] into the street at an angle" as it passed the officer on foot, this Court held that using deadly force to stop it was objectively unreasonable. *Id.* at 399. The officer claimed the car was suspicious because people around the car scattered when

---

[147] ROA.2397; ROA.2525.

[148] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48; *see also supra* pp. 28–32.

[149] *See* ROA.3043-44, ¶¶ 2–3.

[150] ROA.2325 at 13:34–14:34; ROA.2345, at 6:31:11–6:31:48; ROA.2430-31, 39; ROA.2548-49; *see supra* pp. 33–37.

the officer shone his flashlight, so he "ran alongside the [car]" as it pulled off, yelled "Police, stop," and then the car suddenly "pulled to the right [toward the officer], nearly striking him" before he fired "as [the car] drove away." *Flores v. City of Palacios*, 270 F.Supp.2d 865, 869 (S.D. Tex. 2003) *aff'd in part* at 381 F.3d 391. This Court rejected the argument that the car "posed any danger either to him or to anyone else," because, just like here when each of the officers fired,[151] the officer in *Flores* "was already behind [the] car when he shot it." *Flores*, 381 F.3d at 399. Even under Defendants-Appellants' disputed facts, *Flores* would still present a highly similar factual situation: the officer perceived the *Flores* car to be driving toward and "nearly striking him" *after* he ran up alongside the car and yelled "Police, stop," which is the exact specific scenario Coborn and McHugh posit converts Baker's conduct into "weaponiz[ing] his vehicle." *Compare Flores*, 270 F.Supp.2d at 869 *with* Appellant Br., pp. 10–11, 22–23. *Flores* established that such a perception did not justify shooting the car from behind, clearly forbidding exactly what both Coborn and McHugh chose to do.[152] *Flores*, 381 F.3d at 399.

Third, *Edmond v. City of New Orleans*, 20 F.3d 1170, 1994 WL 144782, *1 (5th Cir. 1994) (precedent under 5TH CIR. RULE 47.5.3) also placed Coborn and

---

[151] *See* ROA.3043-44, ¶¶ 2–3.

[152] *Baker*, 68 F.4th at 251; *see supra* pp. 27–33.

McHugh on notice of Baker's right not to be shot merely for driving past Coborn. In *Edmond*, undercover drug officers "cut off" those plaintiffs' vehicle in order to stop the car, because they believed those plaintiffs were "involved in a narcotics transaction." *Id.* Those plaintiffs then "began to make a sharp turn … in an effort to drive past" the officers' vehicle as one of the officers stepped into their path. *Id.* This is similar to Coborn's conduct in this case of stepping in front of the parked sedan, which prompted Baker to turn left and drive around him.[153] In *Edmond*, the Fifth Circuit upheld denying qualified immunity to the officer who responded by "approach[ing] [the plaintiffs' car] and fir[ing] his weapon through the window, after which other officers began to fire as well"—exactly like Coborn and McHugh who fired into the side and rear of the sedan as it drove past and away from them. *Id.*

Defendants-Appellants argue that *Edmond* does not clearly establish the law because that Panel dismissed the qualified immunity appeal, but dismissal does not make the entire decision *dicta*. *Contra* Appellant Br., p. 23. *Edmond* held that the question of "whether they used force in an objectively reasonable way" depended upon "fact issues"—namely, "whether [the suspect] was aiming his car at [one officer] when he tried to get around the unmarked police car, and it is unclear whether [the suspect] even hit" the officer. *Edmond*, 20 F.3d at *1–2. This holding is necessary to the result of *Edmond*, not *dictum*, and provided fair notice that a

---

[153] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48; *see also supra* pp. 28–32.

person simply driving around police trying to detain them does not make it reasonable to shoot that person.

Defendants-Appellants also misleadingly claim that this Court's prior decision in this case "already" distinguished *Edmond* as to the shots after the car moved, but the Fifth Circuit's analysis of *Edmond* was expressly limited to Coborn's "initial shots" fired "before the car moved." *Compare* Appellant Br., p. 27, *with Baker*, 68 F.4th at 246. This Court expressly declined to reach the issue of clearly established law as to those shots fired while the sedan was moving. *Baker*, 68 F.4th at 251.

Defendants-Appellants' assertion that these and other cases do not apply because Coborn and McHugh have accused Baker of weaponizing the sedan is incorrect. Notwithstanding the aforementioned fact dispute which nullifies Defendants-Appellants' argument, *see supra* pp. 25–31, 44–44, all three of these decisions involved vehicles actually threatening those officers—unlike Baker, who was never a threat—before each of those shootings. In *Lytle*, the vehicle obviously had been used "as a weapon:" the vehicle perpetrated a high-speed chase, slammed into an occupied car, and then backed toward the officer seconds before the shooting. *Lytle*, 560 F.3d at 409, 413. Likewise, in *Flores*, the vehicle had "nearly" struck the officer by suddenly turning towards him immediately after he identified himself. *See Flores*, 270 F.Supp.2d at 869. Finally, in *Edmond*, the car "drove directly at [one

officer] at a high rate of speed," albeit, according to those plaintiffs, just as part of an effort to escape, prompting the officer to claim to perceive a threat and open fire. 20 F.3d 1170, 1994 WL 144782, *1. The key reason qualified immunity was denied in those binding decisions is that the immediate threat had ended by the time injurious shots were fired from behind in those cases—just as there was no threat when Baker was shot in the back in this case.

Accordingly, these binding decisions clearly established that Coborn and McHugh could not shoot into Baker's sedan as it drove past Coborn and away from everyone, so this Court should uphold the District Court's denial of Defendants-Appellants' second motion for summary judgment.

### 3.    *Persuasive and intervening precedent shows the law was clearly established at the time of this shooting.*

This Court has repeatedly held that the foregoing caselaw clearly established the law prior to February 21, 2018 in analogous factual circumstances. Defendants-Appellants' assertion that subsequent decisions are entirely irrelevant is wrong. Later decisions as well as unpublished decisions can help "discern[] the clearly established law" created by then-existing binding precedent. *Roque*, 993 F.3d at 337–338; *contra* Appellant Br., p. 28. And this Court *must* consider intervening published decisions to comply with the rule of orderliness. *See, e.g.*, *Joseph*, 981 F.3d at 342 ("For us to say that the unlawfulness of such conduct wasn't clearly established in 2017, despite the fact that *Darden* [a 2018 decision] said it was clearly

established in 2013, would flout precedent and our rule of orderliness"). Persuasive and intervening decisions confirm the application of then-existing binding precedent to Coborn and McHugh's conduct for four reasons.

First, in *Edwards v. Oliver*, on April 29, 2017, two police officers approached a car driving away from the sound of gunfire in reverse. 31 F.4th at 928–29. The first officer approached the car from the front and ordered the car to stop. *Id.* at 928. Ignoring the order, the car kept reversing until it reached an intersection, then shifted into drive and turned onto the intersecting road. *Id.* The second officer approached as the car passed the first officer, and opened fire—fatally hitting one passenger. *Id.* The Fifth Circuit affirmed denial of qualified immunity, reasoning that while the second officer asserted the car posed a threat to the first officer as it accelerated "towards/near/by" him, a jury could view the video to substantiate the plaintiffs' assertion that the first officer was not in the "projected path of the car." *Id.* at 931. Citing *Lytle*, 560 F.3d at 417–18, the Fifth Circuit held that the second officer's shots violated clearly established law under those facts. *Edwards*, 31 F.4th at 932. Likewise, here, the law was clearly established on February 21, 2018 (eight months after the events in *Edwards*) that police officers use unconstitutional excessive force when they shoot into a car that was driving past them and then away from them.[154] Coborn and McHugh's (demonstrably false) assertions that they thought the sedan

---

[154] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48; *see also supra* pp. 28–32.

might hit Coborn is a fact dispute about the "projected path" of Baker's sedan—requiring denial of qualified immunity just like in *Edwards*. *See supra* pp. 25–31. A contrary interpretation of *Lytle*'s application to the analogous facts in this case would improperly overrule the Panel from *Edwards*. *See Joseph*, 981 F.3d at 342.

Second, the Fifth Circuit's decision in *Poole v. City of Shreveport* is also instructive, as it held based on *Roque* and *Lytle* that "an officer violates clearly established law if he shoots a visibly unarmed suspect who is moving away from everyone present at the scene" and affirmed denial of qualified immunity. *Poole v. City of Shreveport*, 13 F.4th 420, 4425 (5th Cir. 2021). The events of *Poole* occurred on March 31, 2017—nine months before this shooting. *Id.* at 422. There, the officer fired as the subject driver was re-entering his vehicle to continue trying to drive away. *Id.* at 422. Earlier during the flight, he had "disobeyed traffic signals, went through two yards, and drove on the wrong side of the road to avoid spike strips the police deployed." *Id.* The disputed facts described in *Poole* are analogous to the situation faced by Coborn and McHugh once the sedan started moving, as it was also "moving away from everyone,"[155] and certainly by the time Baker was hit since he was struck from behind.[156] Again, the rule of orderliness compels an analogous application of *Lytle* as the Panel used in *Poole*. *See Joseph*, 981 F.3d at 342.

---

[155] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48; *see also supra* pp. 28–32.

[156] *See* ROA.3043-44, ¶¶ 2–3.

Third, several binding cases specifically refute Coborn and McHugh's suggestion that they did not have enough time to understand Baker posed no threat. One such case is this Court's prior decision here, which noted that "while the officer may have been in significant danger earlier in the encounter, 'an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased.'" *Baker*, 68 F.4th at 250–251 (quoting *Lytle*, 560 F.3d at 413). In addition, in *Roque*, the Fifth Circuit interpreted this principle to extend to the two second delay between one, potentially justified shot and a second, unjustified shot during which the target dropped their apparent weapon. *Id.* at 330, 334. The time period in *Edwards*, discussed above, was one second. *Edwards*, 31 F.4th at 928, n.1. Similarly, an officer was required to recognize his target was incapacitated in the middle of his volley of shots in *Mason*, 806 F.3d at 277. These cases recognize a legal principle dating back to *Lytle*—and earlier, *see, e.g.*, *Bazan*, 246 F.3d at 493; *White*, 161 F.3d at 914—that was therefore clearly established in February 2018.

Finally, the same principle has been extended in unpublished decisions: Officers cannot shoot a fleeing vehicle if it does not otherwise pose an immediate danger. *Trevino v. Trujillo*, 756 Fed. Appx. 355, 358 (5th Cir. 2018) (dismissing appeal from denial of qualified immunity where driver claimed he was trying to flee police when officer opened fire); *Gragert v. Waybright*, 423 Fed. Appx. 428, 430

(5th Cir. 2011) (same, where dispute was whether moving vehicle had already passed officer at the time officer fired).

Notwithstanding their mistaken argument that such decisions are "irrelevant," Defendants-Appellants cite two later cases of their own, but neither is factually applicable.

*Irwin v. Santiago*, No. 21-10020, 2021 WL 4932988, *3 (5th Cir. Oct. 21, 2021) is not applicable because, there, "the projected path of [that plaintiff's] vehicle was in the officer's direction." *Id*. The video from that case confirms the shooting stopped as soon as that plaintiff's vehicle passed them—missing the nearest officer only by inches.[157] In contrast, here, Coborn continued shooting and McHugh *started* shooting when the sedan passed Coborn—just like *Lytle* and *Flores*—and indeed Coborn gave chase to shoot much later at least five more times.[158] As this Court already held, "continuing to shoot at Baker's vehicle as he drove away could support a finding that the force used was unreasonable." *Baker*, 68 F.4th at 250.

Indeed, this Court in *Edwards v. Oliver* specifically rejected a comparison to *Irwin* because, in *Edwards*, there was a fact dispute about whether the officers were toward the front of that car and whether the car was moving away during the shots at issue. 31 F.4th at 931–932. Similarly, here, the video and forensic evidence shows

---

[157] https://www.ca5.uscourts.gov/opinions/unpub/21/21-10020-BodyCam.mp4.

[158] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48; *see also supra* pp. 28–32.

the sedan was moving away from the officers when the shots that struck Baker were fired, unlike *Irwin*.[159]

*Estevis v. Cantu* is also factually inapplicable because this Court held that officers were in the path of that fleeing vehicle—and that the suspect remained actively dangerous. 134 F.4th 793 (5th Cir. 2025). In that case, police chased a pickup truck driven by a suspect, Estevis, for two hours, with "Estevis running stop signs and traffic lights and, at times, reaching speeds over 100 mph." *Id.* at 795. Estevis was slowed by spike strips, but continued to flee. *Id.* As a result, the two officer defendants, Guajardo and Cantu, forced Estevis to a stop, then stepped out of their police vehicles which were now parked alongside Estevis's vehicle as other officers approached from the opposite side on foot. *Id.* Next, "Estevis immediately threw his truck into reverse and, smoke billowing from his wheels, rammed Guajardo's vehicle." *Id.* Guajardo then shouted "Stop!" and, seconds later:

> Estevis's truck lurched forward and Guajardo fired three shots at the truck's cabin (shots 1–3). Estevis hopped the right-hand curb and collided with a fence, engine revving. During the next four-to-five seconds, Guajardo advanced and, just as the engine stopped revving, fired three more times (shots 4–6). One-to-two seconds after that, Cantu also fired three times (shots 7–9).

*Estevis*, 134 F.4th at 795. *Estevis* held that this presented "dramatically different" facts than *Lytle*, as Estevis had "suddenly reversed and rammed" a police vehicle,

---

[159] *See* ROA.2325 at 14:05; ROA.2329 at 0:47–48; ROA.2999-3000, ¶¶ 7–8; *see also supra* pp. 28–32.

then driven off the road and rammed into a fence, while multiple officers were nearby on foot. *Id.* at 797. Thus, "the officers had good reason to believe they were still under threat from an erratic suspect who seconds earlier had decided to use his truck as a 5,000-pound weapon." *Id.* at 798. Without deciding whether the force was unreasonable, the *Estevis* Panel held that no binding case prohibited "deadly force to apprehend a boxed-in suspect who uses his vehicle as a battering ram." *Id.* at 798.

*Estevis* is far afield from this case; Baker never led officers on a two-hour, high-speed chase; never used the sedan "as a battering ram;" and slowly drove safely on a clear path away, rather than being "boxed-in." Whereas the suspect in *Estevis* was not driving away and was a more actively threatening than the *Lytle* suspect, who seemed to be done threatening the officer as he drove away, Baker never posed a potential threat at all *and* was driving away. *See supra* pp. 25–33.

Thus, later and unpublished Fifth Circuit decisions further reinforce that the law was clearly established in February 21, 2018: Coborn and McHugh could not shoot Baker as his sedan safely passed and then slowly rolled away from them.

### 4. *A consensus of authority outside this circuit independently shows the law was clearly established.*

A robust consensus of cases with very similar facts in eight other Circuits concurs, further clearly establishing the law. *See, e.g.*, *Cowan ex. rel. Estate of Cooper v. Breen*, 352 F.3d 756, 759 (2d Cir. 2003) (affirming denial of qualified immunity to officer who "was over to the side of the vehicle … when he fired the

second [fatal] shot"); *Abraham v. Raso*, 183 F.3d 279, 295, 299 (3d Cir. 1999) (reversing summary judgment for officer who fired through driver's side window of fleeing vehicle, after being in front of car at one point); *Waterman v. Batton*, 393 F.3d 471, 482 (4th Cir. 2004) (objectively unreasonable, but not yet clearly established in 2000, that "once [the victim's] vehicle passed the officers, the threat to their safety was eliminated and thus could not justify the subsequent shots"); *Smith v. Cupp*, 430 F.3d 766, 770 (6th Cir. 2005) (officer who shot through driver's window of stolen police car as "the vehicle was going by him" not entitled to qualified immunity);[160] *Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) (dismissing appeal from denial of qualified immunity where officer stepped in front of moving vehicle moments before officers shot the driver); *Orn v. City of Tacoma, Wash.*, 949 F.3d 1167, 1174–75 (9th Cir. 2020) (affirming denial of qualified immunity as, "[a] moving vehicle can of course pose a threat of serious physical harm, but only if someone is at risk of being struck by it" and the officer "was never in the vehicle's path of travel");[161] *Cordova v. Aragon*, 569 F.3d 1183, 1191–92

---

[160] *See also Kirby v. Duva*, 530 F.3d 475, 482 (6th Cir. 2008) (affirming denial of summary judgment when the deceased's car was "moving slowly and in a non-aggressive manner, could not have hit any of the officers, and was stationary at the time of the shooting"); *Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011); *Murray-Ruhl v. Passinault*, 246 Fed. Appx. 338 (6th Cir. 2007).

[161] *See also Acosta v. City & Cty. of San Francisco*, 83 F.3d 1143, 1146 (9th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001) (reversing grant of qualified immunity where officer shot a driver when he allegedly

(10th Cir. 2009) (finding shooting at moving vehicle from the side violates constitution, but right was not yet clearly established at the time of the shooting); *Vaughan v. Cox*, 343 F.3d 1323, 1329 (11th Cir. 2003) (affirming denial of qualified immunity to officer who fired into a vehicle fleeing on the freeway at high speeds). These eight other circuit opinions independently form a "robust consensus" that clearly establishes Coborn and McHugh's conduct was illegal. Defendants-Appellants attempt to distinguish this consensus by once again relying on their improper claim that Baker threatened Coborn or the public with the sedan, but the evidence shows the opposite, particularly when properly viewed in the light most favorable to Baker and his family. *See supra* pp. 23–33.

The law is clearly established in this circuit and at least eight others that Coborn and McHugh could not shoot Baker merely for slowly driving past Coborn and away from the officers, so this case should be tried to a jury.

---

saw driver move the transmission into gear); *Adams v. Speers*, 473 F.3d 989, 992 (9th Cir. 2007) (denying qualified immunity to officer who shot a slowly fleeing vehicle after a car chase involving several collisions). Relying on *Acosta*, the Ninth Circuit also denied qualified immunity, in a nearly identical case, to an officer who shot at a stolen vehicle while it was leaving a parking lot, including two shots when the officer thought the vehicle was approaching him and a third shot when it had turned to drive past him. *Tubar v. Clift*, 286 Fed. Appx. 348, 351 (9th Cir. 2008); *see Tubar v. Clift*, 453 F. Supp. 2d 1252, 1253 (W.D. Wash. 2006) (detailing the facts).

## VII.  CONCLUSION

For the foregoing reasons, the Court should dismiss this appeal for lack of jurisdiction. If the Court reaches the merits, then the District Court's order should be affirmed.

Dated: November 5, 2025.

Respectfully submitted,

**EDWARDS LAW**
603 W 17th St.
Austin, Texas 78701
Tel.  512-623-7727
Fax.  512-623-7729

By___/s/ Jeff Edwards_____
        JEFF EDWARDS
        State Bar No. 24014406
        jeff@edwards-law.com
        MIKE SINGLEY
        State Bar No. 00794642
        mike@edwards-law.com
        DAVID JAMES
        State Bar No. 24092572
        david@edwards-law.com
        LISA SNEAD
        State Bar No. 240622.04
        lisa@edwards-law.com
        PAUL SAMUEL
        State Bar No. 24124463
        paul@edwards-law.com

EVANS PETREE PC
1715 Aaron Brenner Drive, Suite 800
Memphis, Tennessee 38120
T: 901-525-6781

F: 901-297-4208
E: byoakum@evanspetree.com

By: /s/ Brian L. Yoakum
BRIAN L. YOAKUM
TN Bar No. 024811
*Pro Hac Vice*

**ATTORNEYS     FOR     PLAINTIFFS-
APPELLEES**

# CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system, which sends notification of such filing to the parties that are registered or otherwise entitled to receive notices in this action, including the following:

**SPROUSE SHRADER SMITH PLLC**
Blair Saylor Oscarasson
State Bar No. 24056073
John Massouh
State Bar No. 24026866
701 S. Taylor St., Ste. 500
Amarillo, TX 79105
(806) 468-3300
(806) 373-3454 [fax]

ATTORNEYS FOR DEFENDANTS-APPELLANTS

**EVANS PETREE PC**
Brian Yoakum
TN State Bar No. 024811
1715 Aaron Brenner Dr., Ste. 800
Memphis, TN 38120
    Phone: (901) 525-6781
    Fax:    (901) 521-4606

ATTORNEY FOR PLAINTIFFS-APPELLEES

_____/s/ Jeff Edwards_____
JEFF EDWARDS
**Attorney for Plaintiffs-Appellees**

# CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the filed document in compliance with Fifth Circuit Rule 25.2.1; (3) the document has been scanned with the most recent version of Avast antivirus software and is free of viruses; and (4) the document contains 12,934 words excluding the items identified in FED. R. APP. P. 32(f).

_____/s/ Jeff Edwards_____
JEFF EDWARDS
**Attorney for Plaintiffs-Appellees**